Givan *v.* Masterson.

## Givan *v.* Masterson et al.

[No. 18,362.  Filed Oct. 5, 1898.  Rehearing denied Jan. 24, 1899.]

Contracts.—*Execution Without Reading.*—It is a general rule that one who executes a written instrument without reading it will not be relieved of the consequences of his want of care.  *p. 130.*

Same.—*Execution Without Reading.—Fraud.*—One who, by known trust and confidence reposed in another, relies, and has good cause to rely, upon representations made by such other party, and is thereby induced to execute an instrument for the benefit of such other person, and in the belief that he is executing another and different instrument, may be relieved as against such wrong, in case no innocent third parties are thereby injured.  *pp. 132, 133.*

Deed.—*Execution Without Reading.—When Set Aside for Fraud.*— Where a stepson at the request of his stepfather signed a deed without reading, believing, as was represented by such stepfather, that he was signing a mortgage which he had just read, such deed will be set aside for fraud.  *pp. 130-133.*

Same.—*Action to Set Aside for Fraud.—Evidence.*—In an action by a stepson to set aside a deed alleged to have been procured by his stepfather by fraudulently representing at the time of its execution that it was a mortgage, where it is claimed by plaintiff that he did not know the real nature of the instrument for two months after its

execution, the testimony of a witness that she had afterwards in-
formed plaintiff of the true character of the instrument he had
signed, is admissible as corroborating the evidence of plaintiff that
he did not know the instrument was a deed when he signed it.
*p. 133.*

DEED.—*Action to Set Aside for Fraud.*—*Evidence.*—Where a husband
and wife join in a deed to the husband's stepfather, believing, as rep-
resented by such stepfather, that they were executing a mortgage,
and an action is afterwards brought to set aside the deed, the evi-
dence of the wife that she had reposed great trust and confidence in
her husband's stepfather was admissible.  *p. 133.*

SAME.—*Action to Set Aside for Fraud.*—*When Fraud May be Proved
by Preponderance of Evidence.*—In an action to set aside a deed
alleged to have been procured by the fraud of one in whom the
grantors properly reposed trust and confidence, the fraud may be
established by a preponderance of the evidence; the rule that the
evidence, in order to prevail against a deed regular in form and duly
executed, must satisfy the court beyond a reasonable doubt that the
execution of the deed was procured through the fraud of the grantee
not being applicable.  *pp. 134, 135.*

From the Vigo Superior Court.  *Affirmed.*

*J. F. Carson, C. N. Thompson, J. G. McNutt* and *F. A.
McNutt,* for appellant.

*Frank Carmack, S. R. Hamill* and *F. S. Rowley,* for ap-
pellees.

HOWARD, J.—This was an action brought by appellees to
set aside as fraudulent a deed made by them to appellant.
Appellees allege in their amended complaint that they are
husband and wife; that the appellant is stepfather of the
appellee Wesley; that the said Wesley is the only child of
Jennie Givan, deceased, who died the wife of appellant, and
seized in fee simple of the real estate in controversy, being
certain lands in the city of Terre Haute; that the said Jennie
Givan left as her only heirs at law the appellant, her hus-
band, and the appellee Wesley, her son;  that the said Jennie
Givan and appellant intermarried in 1872, when Wesley was
seven years of age, and that he lived with his mother and step-
father and grew to manhood as a member of the family, and
the relation of father and son always existed between him and

the appellant; that appellees reside in the city of Indianapolis, and on or about October 3, 1894, the appellant called upon them at their home and expressed his desire to make a loan for $500 upon the land in controversy, to enable him to engage in some business; that appellee Wesley, desiring to assist appellant because of their relationship, assented to the encumbering of said real estate, as requested, and procured the assent of his wife and co-appellee to join in the mortgage; that on this visit appellant exhibited to appellees an instrument purporting to be a mortgage upon said property for $500, which instrument appellees then read and agreed to sign; that on the occasion appellant took dinner with appellees, and it was at the dinner hour that the conversation and understanding as to the execution of the mortgage took place; that immediately after dinner appellees met appellant at a notary's office in the city of Indianapolis, where appellant handed to the notary an instrument, to all appearance the mortgage that appellees had just read at their house and agreed to sign; that upon the instrument being handed to the notary he remarked to appellees, "I suppose you understand the nature of this," and upon their assenting he indicated to them the place for their signatures and thereupon they signed and acknowledged the instrument; that during this proceeding appellant stood by and heard the words of the notary and witnessed the conduct of appellees without saying a word; that appellees signed the instrument believing it to be the mortgage which appellant had exhibited to them at their home and which they had agreed to sign; that they signed the same without any consideration whatever, but simply as a favor and accommodation to appellant; that after having read the instrument which appellant asked them to sign, the instrument which they did sign was exhibited to them by the appellant as the same instrument which they had just read at their house; that instead of the instrument thus executed by them being the mortgage which they had just read, it was

a quitclaim deed which appellant had procured to be pre-
pared without their knowledge or consent, and by the trick
and fraudulent conduct of appellant herein set out, he pre-
sented it to them and had them execute it in the manner
aforesaid, well knowing at the time that appellees, by reason
of his conduct, were misled into signing the instrument, be-
lieving it to be the mortgage which he had shown them at
their house, well knowing that they would not have executed
a deed to their interest in the premises, and knowing that ap-
pellees were willing to join in the mortgage only, as he re-
quested, because they reposed in him the confidence shown
by a child toward a parent; that for the purpose of mislead-
ing, deceiving, and defrauding appellees, appellant procured
the quitclaim deed to be prepared without their knowledge,
and by his misleading conduct, as aforesaid, procured their
execution of the same by having it, to all appearance, the
mortgage which they had read at their home, and substitu-
ting it in place thereof; that appellees were in the notary's
office but a short time, long enough to affix their signatures
aforesaid, and it was two months thereafter before they
learned that the instrument which they had signed was a
quitclaim deed to said real estate instead of the said mort-
gage. A copy of the quitclaim deed is filed as an exhibit to
the complaint; and it is alleged that because of the fraud
and deceit of the appellant which he practiced upon appellees
by reason of his knowledge of the confidence which they re-
posed in him as their stepfather, the deed should be set aside
as fraudulent and void. A demurrer was overruled to this
complaint, and the ruling so made is first complained of as
error.

The complaint, as we think, states a good cause of action.
It is true that, in general, a person who executes a written in-
strument without reading it will not be relieved of the con-
sequences of his want of care, but there are exceptions to this
rule; and when it appears that one was deceived without
fault on his part, by relying upon the representations of an-

other in whom he had good right to repose trust and confidence, the court, if satisfied of the truth of such allegations, will set aside the instrument as procured through fraud.

It has often been decided that a deed or other contract may be set aside for such fraudulent misrepresentations, even though the means of obtaining information were fully open to the party deceived, where, from the circumstances, he was induced to rely upon the other party's information. *Matlock* v. *Todd*, 19 Ind. 130; *Peter* v. *Wright*, 6 Ind. 183; *Robinson* v. *Reinhart*, 137 Ind. 674. "Ordinarily," says Judge Elliott, in *Robinson* v. *Glass*, 94 Ind. 211, "one contracting party has no right to rely upon the statements of the other as to the character or contents of a written instrument; but while this is true, it is also true that if a known trust and confidence is reposed in the person making the representations, and there is a relationship justifying such trust and confidence, then the persons to whom the representations are made may rely upon them." Citing *Shaeffer* v. *Sleade*, 7 Blackf. 178; *Peter* v. *Wright, supra; Bischof* v. *Coffelt*, 6 Ind. 23; *Matlock* v. *Todd, supra; Worley* v. *Moore*, 77 Ind. 567; 2 Parsons Contracts (7th ed.), 774.

In *Shaeffer* v. *Sleade, supra*, it was said by the court, citing many authorities, that "When a party to a contract places a known trust and confidence in the other party, and acts upon his opinion, any misrepresentation by the party confided in, in a material matter constituting an inducement or motive to the act of the other party, and by which an undue advantage is taken of him, is regarded as a fraud against which equity will relieve."

The allegations of the complaint before us disclose a studied design by appellant to deceive his stepson and wife, under the guise of asking them to aid him in borrowing money on a mortgage, according to which they were induced to execute a deed, believing and trusting in their stepfather that the paper they were signing was the same mortgage which he had shown to them at the dinner in their home a

short time before, and which they had there read and understood. As said by Judge Story, cited in *Peter* v. *Wright*, 6 Ind. 183, "Where a party designedly produces a false impression in order to mislead, entrap, or obtain undue advantage over another—in every such case there is fraud;—an evil act with an evil intent." 1 Story Eq. Jur. 201.

In *Byers* v. *Daugherty*, 40 Ind. 198, it was said: "Where a different instrument from that which the party supposes he is executing is fraudulently substituted by the other party to it, there can be no doubt but that this is fraud. The party does not do what he meant to do. He intended to sign one instrument, and by the fraud is made to sign another and different one." Citing 1 Chit. Pl. 483, note 1; *Van Valkenburgh* v. *Rouk*, 12 John. 337; *Taylor* v. *King*, 6 Munf. (Va.) 358.

*Miller* v. *Powers*, 119 Ind. 79, and other cases relied upon by appellant, are, as we think, not applicable to such a case as this. It is true, in general, as already intimated, that one who executes a written instrument without reading it, or otherwise assuring himself of its contents, must suffer any evil consequences of such folly. But the law recognizes that the relations of persons may be such that one may rely implicitly upon the good faith and confidence resulting from such relationship. It may be that, even in such a case of misplaced confidence, innocent third parties will not be allowed to suffer by the want of caution on the part of the confiding and deceived party to the contract. For it is held that of two innocent parties that one must suffer whose act, though innocent, has been the means used to perpetrate the wrong, rather than the one who was in no way instrumental in bringing about such wrong. Here, however, it is the wrongdoer himself who is seeking to charge the party that confided in him and was thereby deceived. The deceiving party can not thus take advantage of his own wrong and charge his victim with neglect in having failed to guard against such deception. The rule is therefore, as stated, that one who, by

reason of known trust and confidence reposed in another, relies, and has good cause to rely, upon representations made by such other party, and is thereby overreached and wronged, may be relieved as against such wrong, in case no innocent third parties are thereby injured.

Under the assignment that the court erred in overruling the motion for a new trial, it is first contended that it was error to allow the witness Josie Sargent to testify that she informed the appellees that the instrument executed by them was a quitclaim deed. No good reason is given why this evidence was not proper. The evidence was most competent, as corroborating the evidence of appellees that they did not know that the instrument executed by them was a deed, but supposed it to be a mortgage. Indeed the detailed evidence of this witness, who had been brought up as a daughter in the family of appellant, and with whom he talked freely after he had procured the quitclaim deed, went very far to show that he had completely deceived the appellees and procured a deed from them under the guise of persuading them to join in a mortgage to enable him to engage in business.

Neither is any good reason shown why the appellee Carrie B. Masterson should not have been allowed, as she was, to testify to the trust and confidence reposed by her in the appellant, as her husband's stepfather. Such testimony furnished the reason for her readiness to execute the instrument in appellant's favor, as requested by her husband, and showed a sufficient reason for her want of care in not asking to have it read before she signed it.

Complaint is also made that appellant was not allowed to testify as to the reason why he had an old deed with him at the time of taking dinner at appellee's house; and that he was also not allowed to testify as to a mortgage made on the property in question at a time subsequent to the date of the quitclaim deed. We are unable to see what relevancy these proposed items of evidence had to the transaction complained of. If the evidence had been admitted it could not in any

way have shown any explanation or justification of the charge made against appellant of having deceived appellees into executing the quitclaim deed instead of the mortgage which they believed they were executing.

It is finally contended that the decision of the court is not sustained by sufficient evidence, that it is contrary to the evidence and contrary to law. The discussion in support of these contentions proceeds on the ground that the evidence, in order to prevail against a deed regular in form and duly executed, ought to satisfy the court beyond all reasonable doubt that the execution of the deed was procured through the fraud of the grantee. We do not think that the rule so contended for applies to such a case as this. It is true that where a person has had full opportunity to know of the contents of a written instrument before executing it, and the parties to the contract afterwards differ as to their understanding of its terms, one asserting and the other denying that the writing correctly expresses the terms of the contract as previously agreed to, then, no doubt, the rule is that only the most convincing proof will be accepted as sufficient to overcome the written, signed and acknowledged instrument of the party who afterwards denies the authenticity of such instrument. *Habbe* v. *Viele*, 148 Ind. 116.

Here, however, the very contention is, not that there was any mistake as to the terms of an instrument which both parties had full opportunity to read and understand, but that, by the fraud of one party, caused by the known trust and confidence properly and legitimately reposed in him by the other, the second party was deceived and lulled into security, so that reliance was placed upon false representations, and a document altogether different from that intended was in good faith acknowledged and executed. Such deception takes the place of force. There is no free meeting of mind with mind, and no valid contract entered into. The fact of such fraud is to be proved and found as any other fact, and that by a consideration of the evidence presented. We are, be-

sides, of opinion that the evidence before the court, and all the surrounding circumstances, were such as to have amply justified the court in reaching the conclusion that the execution of the quitclaim deed was procured by imposing upon the appellees through the parental influence of the appellant. To hold the deed good would be to hold that a young man, without other property, and with a wife and children to support, should, without consideration or compensation ·of any kind, be willing to relinquish all claim to any part of the only property or estate left him by his mother. That he should be willing to join in a mortgage upon this property to enable one who occupied to him the place of father to procure a loan of money, seems to have gone a long way in filial duty; but that he should go further, and be willing to give away from his wife and children all his patrimony to enable his stepfather to engage in business, seems at least to call for some explanation. The record shows none. Even if the case called for evidence beyond a reasonable doubt to support the conclusions reached, we are not sure that such evidence is not shown.

Judgment affirmed.