## RAY *v.* BAKER ET AL.

[No. 20,595.    Filed June 2, 1905.]

1. PLEADING.—*Fraud.—Allegations.*—While it is necessary that the facts constituting fraud should be set out in a pleading, still it is unnecessary to set out every detail tending to show the fraud, and a general allegation that the defrauded party relied upon the fraudulent representations or acts is sufficient.   p. 83.

2. TRIAL.—*Conclusions of Law.—Exception.—Effect.*—An exception to the conclusions of law admits, for its purpose, that the special findings are full and correct, and, nothing appearing to the contrary, that all material facts, within the issues, proved by the evidence are stated therein.   p. 83.

3. PLEADING. — *Demurrer. — Special Findings. — Exception. — When Same Questions Raised.*—Where the special findings con-

tain the same facts set out in a pleading, an exception to the conclusions of law thereon raises the same questions that a demurrer raises to such pleading.   p. 84.

4.   CANCELATION OF INSTRUMENTS. — Mortgages. — Bills and Notes.—Harmless Error.—Where a decree is entered for, defendants, in an action on a promissory note and for the foreclosure of a mortgage securing same, on their answer of fraud, it is harmless error to enter a decree of cancelation of such note and mortgage on defendants' cross-complaint.   p. 84.

5.   FRAUD.—Bills and Notes.—Mortgages.—Misrepresentations. —Where a plaintiff's assignor procured the defendant husband to execute a note and mortgage for $1,560 by a false representation that such note was for only $791, the amount really due, and such defendant was illiterate, unable to read such note and mortgage, and relied upon such assignor in the transaction of such business, such assignor was guilty of positive fraud; and such defendant's failure to get some one to read such note and mortgage before execution will not alone bar relief.   p. 85.

6.   SAME.—False Representations.—Contract Induced Thereby. —Relief.—Where defendants were induced, by the false representations of plaintiff's assignor, to enter into a contract injurious to themselves, the plaintiff will not be permitted to enforce such contract.   p. 88.

7.   NEW TRIAL. — Newly-Discovered Evidence. — Cumulative. — Where plaintiff introduced in evidence a carbon copy of a contract, the execution of which defendants denied, the fact that he afterwards found the original, apparently executed by defendants, is not a good reason for a new trial, such evidence being merely cumulative.   p. 88.

8.   BILLS AND NOTES.—Mortgages.—Innocent Purchaser.—One who, after maturity, buys a note, secured by a mortgage, payable at a bank in Illinois, and executed in Indiana, is not an innocent purchaser.   p. 89..

9.   SAME.—Fraud. — Answer. — Reply. — Where the defendants answer fraud to an action on a promissory note and mortgage securing same, and the reply is a general denial, no question as to plaintiff's being a good-faith purchaser can be raised under the issues.   p. 90.

10.   APPEAL AND ERROR.—Statutes.—Weighing Evidence.—Section eight of the act of 1903 (Acts 1903, p. 338) does not contemplate that the Supreme Court shall undertake to weigh the evidence in equity cases on appeal where such evidence consists principally of oral testimony and is in conflict on the material questions in issue.   Egbert v. Rush, 7 Ind. 706, explained.   p. 90.

From Boone Circuit Court; *Samuel R. Artman,* Judge.

Suit by Henry Ray against Charles Baker and wife. From a decree for defendants, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*J. Frank Hanly, Will R. Wood, William M. Acton* and *Charles M. Zion,* for appellant.

*Higgins & Holloman,* for appellees.

Jordan, J.—On April 23, 1903, appellant instituted this suit to foreclose a mortgage alleged to have been executed by appellee Charles Baker, and Sarah Baker, his wife, on March 20, 1901, on seventy-seven acres of land, described in the complaint, situate in Boone county, Indiana, securing the payment of one principal note of even date for the sum of $1,560, together with certain coupon interest notes.

It is alleged in the complaint that the notes and mortgage therein described were all executed to Alva E. Junkens, of Homer, Champaign county, Illinois. Copies of the notes and mortgage in question were filed with the complaint, and appear on the face thereof to have been executed at Lebanon, Indiana, and are made payable at the Citizens Bank at Homer, Illinois. They are alleged to have been assigned by Junkens to the plaintiff on February 23, 1903. Appellees filed an answer to the complaint in seven paragraphs, the first paragraph of which is a general denial. The second alleges no consideration for the execution of the notes and mortgage, and that the plaintiff accepted the assignment thereof with full knowledge of that fact. The third is apparently constructed upon the theory that there was no consideration for executing the notes and mortgage. After alleging certain facts leading up to their execution, it is averred generally in said paragraph that these contracts were wholly without any consideration, and that the plaintiff accepted the assignment thereof with full knowl-

edge of that fact. The fifth paragraph charges fraud upon the part of Junkens in obtaining the execution of said notes and mortgage. With some exceptions the sixth paragraph is substantially the same as the fifth. Appellees also filed a cross-complaint in two paragraphs, alleging facts similar in the order named to those set up in the third and fifth paragraphs of the answer, and demanded that the notes and mortgage be canceled. Appellant unsuccessfully demurred to the third, fifth and sixth paragraphs of the answer, and also to each paragraph of the cross-complaint. He then replied to the answer by a general denial, and a like pleading constituted his answer to the cross-complaint.

Upon the issues joined, the court, on request, made a special finding of facts, and stated its conclusions thereon against appellant. Over the motion of the latter for a new trial, assigning therein (1) that the decision of the court is contrary to law; (2) that it is not sustained by sufficient evidence; (3) surprise, etc.; and (4) newly-discovered evidence—a judgment was rendered that appellant take nothing by his complaint, that the notes and mortgage in suit be canceled, and that the defendants recover costs. The rulings of the court upon the demurrers to the answer and cross-complaint are assigned as errors. It is also assigned that the court erred in each of its conclusions of law, and in denying the motion for a new trial.

The court's special findings disclose substantially the following facts: In March, 1901, and prior thereto, Alva E. Junkens was residing in the town of Homer, in the state of Illinois, and, in addition to other business, was engaged in buying and selling stock, and as a real estate agent. He had extensive business experience, and was a man of pronounced business ability. The defendant Charles Baker, appellee herein, owned sixty-five acres of land situate in the state of Illinois, near said town of Homer. He and his wife, Sarah, a co-appellee herein, resided thereon. Said Charles Baker in the March aforesaid desired to purchase

and become the owner of land in the State of Indiana, and
for that purpose he entered into a contract with said Jun-
kens to the effect that the latter should purchase said sixty-
five acres of Illinois land for the price of $95 per acre; and,
as a further consideration for said purchase, it was agreed
by and between said parties that Junkins should accom-
pany Baker to Indiana, and there find a tract of land
which the latter would be willing to accept.   The pur-
chase money of the sixty-five acres of Illinois land, or so
much thereof as might be necessary, was to be paid by
Junkens on the land to be purchased in Indiana, and the
remainder thereof, if any, was to be paid to said Charles
Baker.   Pursuant to this agreement and contract, said
parties, about the 18th day of March, 1901, came to the
city of Lebanon, in Boone county, Indiana, and there in-
quired of a firm of real estate agents in regard to the pur-
chase of lands, and were by said agents directed to a tract
of land situate in said county, containing seventy-seven
acres, which they appear to have had in their hands for
sale.   These agents informed Junkens and Baker that this
land could be purchased for $55 per acre.   After Junkens
and Baker had made some two or three inspections of the
land in question, the latter agreed to accept it, and he and
Junkens commenced negotiations with the owner thereof,
one Robert Spears, for its purchase.   In the meantime
Spears had raised the price of the land from $55 to $58
per acre.   Junkens advised Baker that it was worth this
price, and thereupon Baker agreed to accept it.   It was
then agreed between said parties that Baker should convey
the sixty-five acres of land which he owned in the state of
Illinois to Junkens at $95 per acre, or, in other words, for
$6,175, the conveyance thereof to be subject to a mortgage
lien thereon of $2,500, the amount of said lien to be de-
ducted from the purchase price.   The remainder of the
purchase money—$3,675—under the agreement was to be
paid by Junkens.   By the terms of the contract or agree-

ment between said parties the tract of land in Boone county, Indiana, was to be conveyed to Baker, free from all encumbrances, for $4,466. After making said agreement and contract, Junkens, on March 20, 1901, procured said land to be conveyed by the owner thereof to himself, and on the same day, without the knowledge or consent of Baker, he executed a mortgage thereon for $2,200 to Joseph B. Homan, and appropriated said amount of money so obtained to his own use. On the 20th day of March, Junkens procured Baker to execute to him a deed for the sixty-five acres of land in the state of Illinois. In this deed of conveyance the consideration was stated to be $6,175, being at the rate of $95 per acre. The deed was executed and acknowledged by Baker before a notary public in said city of Lebanon. His wife, not being present, did not on said day join him in the execution of this deed to Junkens. Under the terms of the contract for the exchange or purchase of the aforesaid lands, there was a balance of $791 due from Baker to Junkens, said amount being the difference between $3,675—the net purchase money for the Illinois land which was due from Junkens to Baker—and the purchase price of $4,466, to be paid by Baker for the Boone county land, and it was agreed at that time between the parties that Baker should execute to Junkens his note for said amount, payable three years after date. To secure this note it was agreed that Baker should execute a mortgage on the seventy-seven acres of land in Boone county.

The court finds that Baker is a very illiterate man, and is practically unable to speak or write the English language, and at the time of the aforesaid transactions between him and Junkens he was unacquainted with business matters, and was wholly ignorant of the meaning of legal forms and proceedings. Prior to said time he had had numerous transactions with Junkens, by the way of selling him stock and grain, and he relied on the statements made by Junkens that the latter would prepare a note and mortgage to evi-

dence and secure said sum of $791. The court finds that Junkens, instead of preparing a note for $791, and a mortgage on the Boone county land to secure the same, prepared the note and mortgage in suit, each of date of March 20, 1901; that the note so prepared by him represented $1,560, instead of $791, and was to be due and payable on March 20, 1904, with interest at six per cent., and five per cent. attorney's fees, with coupon interest notes attached. The mortgage to secure the notes was on said seventy-seven acres of land in Boone county, and by the terms of the note the interest was to be paid annually, and the same was evidenced by three coupon notes attached to the principal note, and secured by the mortgage. The notes and mortgage in suit are set out and made a part of the special finding. The mortgage contains many terms and stipulations, and provides, among other things, that if default is made in the payment of any of the notes or interest thereon, or the taxes upon the mortgaged premises, then and in either of said events the entire amount secured shall become due and the mortgage may be foreclosed.

The court further finds that Junkens, instead of presenting to Baker a note for $791, for him to execute, presented one for $1,560, and at the same time presented to him a mortgage to be executed on the Boone county land, securing said note for $1,560, together with the coupon interest notes attached thereto, and that Junkens then and there "falsely, fraudulently, dishonestly and deceitfully" stated and informed Baker that said note was for $791, and that the mortgage was to secure that amount. Baker believed that these statements made by Junkens were true, and relied upon them as true, and by reason of his ignorance and inability intelligently to read said notes and mortgage, and to comprehend the same, he signed and executed said instruments and acknowledged the execution thereof. At the time he signed and executed them he did not owe Junkens $1,560, but owed him only $791. The statements and rep-

resentations made by Junkens to Baker, that the notes and mortgage which he presented to him were for only $791, were false, fraudulent and dishonest, and were made by him for the purpose of inducing Baker to sign and execute said notes and mortgage, and he was thereby induced to sign and execute the same, believing that the note presented was for only $791, and at said time he had no knowledge or notice that he was signing and executing a note and mortgage for $1,560. After Junkens had procured Baker to execute the notes and mortgage, he left Indiana, leaving Baker in said State, and took the notes and mortgage in question to the home of Baker in the state of Illinois, and there presented them to Baker's wife, appellee herein, and falsely and fraudulently represented to her that the notes and mortgage which he presented for her to execute represented the remainder of the purchase money of the Indiana land. She believed that said statements and representations made by Junkens to her were true, and relied on the same as true, and believing that said notes and mortgage represented the true amount which was due from her husband to Junkens as purchase money for the seventy-seven acres of land in Boone county, Indiana, executed said notes and mortgage for $1,560. Junkens, after procuring Mrs. Baker to execute these instruments, executed and acknowledged in the state of Illinois a deed to said Charles Baker for the seventy-seven acres of Boone county land, stipulating in said deed that the consideration for the conveyance was $4,466, and further stipulating and providing therein that Baker accept said land subject to a mortgage thereon for $2,200. This stipulation and provision in said deed was without the knowledge or consent of Baker, and was contrary to and in violation of the contract between him and Junkens for the purchase of said real estate. After Junkens had executed this latter deed he retained the possession thereof for thirty days and over, and then sent it to the

recorder of Boone county, Indiana, and caused it to be recorded in the office of said recorder; he paying the recording and transfer fees. Baker had no knowledge of the execution of this deèd by Junkens, and knew nothing about the provisions and stipulations therein until after the deed had been recorded in the recorder's office. He was then informed by the deputy recorder in respect to the contents and stipulations of the deed, and on receiving this information he declined and refused to accept it, and declined to take it out of the recorder's office.

The court finds that the stipulations contained in the mortgage in question provided that the note should become due upon the event of default being made in the payment of interest, etc., and further finds that Baker at no time paid any part of the principal note, interest, nor any of the interest notes attached thereto, and that he has at all times declined to pay any of said notes, asserting that he did not owe them, and that by reason of his default in not paying the interest when due the principal note for $1,560 became due on March 20, 1902. Thereafter, on February 16, 1903, Junkens, by indorsement, assigned said notes, without recourse, to the plaintiff, appellant herein. The court finds that Junkens has employed counsel and procured the testimony of witnesses at his own expense in the prosecution of this suit.

On the foregoing facts the court stated its conclusions of law as follows: (1) That upon the issues formed by the complaint and the answer thereto the law is with the defendants, and they are entitled to a judgment for costs; (2) on the issues formed by the cross-complaint the law is with the cross-complainants, and they are entitled to a judgment canceling the notes and mortgage in suit and for costs. Appellant separately excepted to each of the aforesaid conclusions of law.

The first contention advanced by appellant's counsel is that the third, fifth and sixth paragraphs of the answer,

and the first and second paragraphs of the cross-complaint are insufficient on demurrer. The particular insistence is that there is an entire absence in each of any facts to show that appellee Charles Baker relied upon the alleged false statements or representations made to him by Junkens in procuring the execution of the notes and mortgage. The rule is well settled by the decisions of this court that where a party in his pleading seeks to predicate either a cause of action or a cause of defense on the ground of fraud, the facts constituting such fraud must be alleged. *Howe Machine Co.* v. *Brown* (1881), 78 Ind. 209; *Bennett* v. *McIntire* (1889), 121 Ind. 231, 6 L. R. A. 736; *Conant* v. *National State Bank* (1889), 121 Ind. 323. While this is true, still it is not necessary that the pleading should minutely state all of the facts and circumstances tending to establish the charge of fraud. In a case of fraud, one of the material facts to be shown is that the party defrauded in good faith relied upon the alleged false representations or fraudulent acts. *Howe Machine Co.* v. *Brown, supra,* and cases cited. As a matter of pleading, the fact that the party defrauded relied on the fraudulent representations or acts alleged may be, and generally is, shown by a direct averment to that effect.

The fifth and sixth paragraphs of the answer, and also the second paragraph of the cross-complaint, by express allegations disclose that appellees, in good faith, believed that the fraudulent representations in question were true, and thereby they were induced and caused to execute the notes and mortgage. If they believed the representations to be true, and were induced thereby to execute said instruments, these facts may be accepted as sufficient to show that they relied thereon.

By excepting to the conclusions of law, appellant must be deemed to have admitted (at least for the purpose of the exception) that the facts in the special findings were full and correct; and, in the absence of any

showing to the contrary, the presumption will be that all material facts within the issues, proved by the evidence, are stated therein.

As the finding of facts in this case may be said substantially to embrace all of the material facts set up in the fifth and sixth paragraphs of the answer and the second paragraph of the cross-complaint, therefore the merits of the controversy upon the issues tendered by these paragraphs may be determined by the facts found by the court. Consequently the error, if any, in overruling the demurrer to the third paragraph of the answer and the first paragraph of the cross-complaint may be regarded as harmless.

Under the circumstances, it also becomes unnecessary to review the sufficiency of the fifth and sixth paragraphs of the answer, or the second paragraph of the cross-complaint, for the same questions as were raised by the demurrer thereto are presented by the exceptions to the conclusions of law on the facts exhibited by the special findings. *State, ex rel., v. Vogel* (1889), 117 Ind. 188; *Reddick* v. *Keesling* (1891), 129 Ind. 128; *Scanlin* v. *Stewart* (1894), 138 Ind. 574; *Parish* v. *Camplin* (1894), 139 Ind. 1; *Goodwine* v. *Cadwallader* (1902), 158 Ind. 202; *Indianapolis, etc., R. Co.* v. *Center Tp.* (1895), 143 Ind. 63; *Runner* v. *Scott* (1897), 150 Ind. 441; *Consolidated Stone Co.* v. *Morgan* (1903), 160 Ind. 241.

The principal contention of appellant's counsel in respect to the special findings is that the court was not justified by the facts in awarding a decree on the cross-complaint canceling the notes and mortgage. The judgment of the court that the plaintiff (appellant herein) take nothing by his action, so long as it stands, is a complete bar against the enforcement of the notes and mortgage. Conceding, for the sake of argument, that the trial court erred under the facts in decreeing a cancelation, it is manifest that appellant is not harmed or injured by being

required to cancel the notes and mortgage which he is forever barred by the judgment from enforcing against appellees. *Marion Mfg. Co.* v. *Harding* (1900), 155 Ind. 648.

It appears from the finding that there was an agreement between appellee Charles Baker and Alva E. Junkens that the latter would purchase sixty-five acres of land owned by the former, and upon which he and his wife at the time resided. This real estate was situated near the town of Homer in the state of Illinois. The agreed purchase price therefor was $95 per acre, or, in the aggregate, $6,175. Junkens was to take the land subject to a mortgage lien thereon of $2,500, and was to pay to Baker $3,675, being the remainder of the purchase money, after deducting this lien. As a further consideration, he agreed to accompany Baker to Indiana and assist him in purchasing a tract of land in the latter State. It is disclosed that in pursuance of this agreement the parties came to this State, and that Baker finally agreed to buy seventy-seven acres of land in Boone county, at $58 per acre. This tract was to be conveyed to him free from encumbrances. After making this agreement, Junkens, it appears, procured a conveyance of the Boone county land from the owner thereof to himself, and then, without the knowledge or consent of Baker, mortgaged it for $2,200, and appropriated the money obtained thereby to his own use. On the same day he procured Baker to convey to him the sixty-five acres of land in Illinois, subject to said mortgage lien thereon. Under the agreement between the parties in regard to these lands, an amount of $791 was due from Baker to Junkens, and, as a security therefor, the former was to execute to the latter a mortgage on the Boone county land.

Baker, as shown, is a very illiterate man—unable to speak or write the English language, unacquainted with the transaction of business matters, and wholly ignorant of the

meaning of legal terms and proceedings—while, on the other hand, Junkens is one who has had much business experience.   He resided in the town of Homer, Illinois, which place was near to Baker's farm.   He was engaged as a real estate agent, and also in buying and selling stock. The finding discloses that he is a man of pronounced busi- ness ability, and one who was not unknown to Baker in matters of business, but one with whom the latter on pre- vious occasions had had numerous dealings in selling him stock and grain.   In fact, it appears that he came with Baker to Boone county, Indiana, for the very purpose of assisting him in purchasing or securing a tract of land. The fact that Baker, an illiterate, ignorant and inexperi- enced man, should, under these circumstances, rely on his statement or promise that he would prepare a note and mortgage for $791 for him and his wife to sign, was cer- tainly not unreasonable.   Instead, however, of complying with this promise or agreement, he had a note and mortgage prepared for $1,560—nearly double the amount that was actually due to him from Baker—and by and through his false and fraudulent representations procured the execution of said note and mortgage.   Junkens having agreed to pre- pare a note for $791 for appellees to execute, was, in per- forming his agreement, morally and legally bound to act in good faith.   The only reasonable conclusion which can be drawn from the facts in the case is that he was actuated in making the statements relative to the amount of the note for the fraudulent purpose of gaining an unfair advantage over Baker.

While the facts do not disclose any fiduciary relations between these parties, nevertheless, their previous dealings with each other in business matters, and the further fact that Junkens accompanied Baker to Indiana to assist him in the purchase of land, justified the latter in giving credit to the statements and representations made by the former as to the amount of the note which he had prepared.   Baker,

as shown, intended to sign a note and mortgage for $791, but, through the means of the fraud perpetrated upon him, he was caused to sign the notes and mortgage involved in this action. That Junkens, under the circumstances, committed a positive fraud is certainly true. *Byers* v. *Daugherty* (1872), 40 Ind. 198; *Givan* v. *Masterson* (1899), 152 Ind. 127.

The facts found do not present a case in which it can be asserted that Baker reposed a blind confidence in Junkens, or, in other words, that, under the circumstances, by his failing to procure some one to read the note and mortgage for him before he signed them, he did not exercise reasonable diligence or discretion. *Worley* v. *Moore* (1881), 77 Ind. 567; *Robinson* v. *Glass* (1884), 94 Ind. 211; *Shaeffer* v. *Sleade* (1844), 7 Blackf. 178; 14 Am. and Eng. Ency. Law (2d ed.), 123.

We are not unmindful of the general rule, affirmed by the decisions of this court, that a written contract can not be avoided merely because the party who executed it was ignorant of its contents, if no fraud was practiced to induce him to refrain from reading it or having it read, for in such a case his ignorance in regard to its contents must be attributed to his own negligence. *Robinson* v. *Glass, supra,* and cases cited.

The law, however, recognizes that the relations existing between persons may be of such a character that one by reason thereof may implicitly repose faith and confidence in the statements of the other. *Givan* v. *Masterson, supra.* Of course, in such a case, if the question arises, regard must be had for the rights of innocent third parties. The facts found, briefly stated, may be said to present a case where one having the confidence of another took advantage of the latter's illiteracy, ignorance, and of the known confidence reposed, and by means of fraudulent representations procured him to sign a note and mortgage other than the one he intended or supposed he was executing. Under such

circumstances, the fact alone that the illiterate and de-
frauded party did not procure some one to read the note
for him before signing can not be held, as a matter of law,
to constitute such a negligent signing thereof as would pre-
vent the defendant from controverting its execution even
against a *bona fide* holder. The question of negligence
under such circumstances would be one of fact for the de-
termination of the court or jury trying the cause. *Webb*
v. *Corbin* (1881), 78 Ind. 403; *Baldwin* v. *Bricker* (1882),
86 Ind. 221; *Mitchell* v. *Tomlinson* (1883), 91 Ind. 167;
14 Am. and Eng. Ency. Law (2d ed.), 134; *Trambly* v.
*Ricard* (1881), 130 Mass. 259; *Albany City Savings In-
stitution* v. *Burdick* (1881), 87 N. Y. 40.

It is a well-settled principle that where a person design-
edly or knowingly causes a false impression or belief to be
entertained by another, and the latter is thereby
6.    induced to make a contract injurious to his interests,
such a contract is so impressed with fraud that a
court will not sanction the enforcement thereof against the
defrauded party. *Laidla* v. *Loveless* (1872), 40 Ind. 211;
*Peter* v. *Wright* (1855), 6 Ind. 183; *Bethell* v. *Bethell*
(1883), 92 Ind. 318; *Leeds* v. *Boyer* (1877), 59 Ind. 289;
*Howe Machine Co.* v. *Brown* (1881), 78 Ind. 209, and
cases cited. The facts as found by the court warrant the
first conclusion of law, and there was no error committed
by denying appellant's exception thereto.

It is next insisted that the court erred in not granting a
new trial on the ground of newly-discovered evidence. This
consisted of an alleged written contract between one
7.    O'Neil and appellees, the execution of which they
controverted at the trial. The contract in question
appears to have been mislaid, and for that reason appellant
did not introduce it in evidence. After a diligent but fruit-
less search had been made to discover it, the court per-
mitted him to introduce a copy thereof. After the trial the
lost document appears to have been discovered by appel-

lant. The latter, having availed himself óf the benefit of introducing a copy of the instrument in question, was not, under the circumstances, entitled to a new trial on the ground of newly-discovered evidence. The evidence which the original contract would have furnished would have been merely cumulative to that afforded by the copy. While perhaps it might have served to strengthen the evidence, which was given on behalf of appellant, to establish that the signatures of appellees thereto were genuine, nevertheless, its effect on that point would have been nothing more than cumulative. There was no error in denying the motion for a new trial on this ground. *Wisconsin Cent. R. Co.* v. *Ross* (1892), 142 Ill. 9, 31 N. E. 412, 34 Am. St. 49; *Chapman* v. *Moore* (1886), 107 Ind. 223; 14 Ency. Pl. and Pr., 797, 798.

The further argument is advanced that by the evidence appellant is shown to have purchased for value and in good faith the notes in controversy, without any knowl-
8. edge of the fraud by which their execution· was procured. These facts, counsel contend, should have been found by the court, and for this reason it is claimed that the special finding is contrary to the evidence. The court found, however, that the notes were assigned by Junkens to appellant without recourse after the principal note, by reason of the stipulations in the mortgage, had become due. There is no room whatever, under the evidence, for the contention that appellant is entitled to be regarded as a holder in good faith of commercial paper. This is true for several reasons, among which we may mention: (1) The notes in question were not payable at any bank within the State of Indiana, but were payable at a bank in the state of Illinois. Consequently under our laws they were not negotiable as inland bills of exchange. *Patterson* v.· *Carrell* (1877), 60 Ind. 128, and cases cited. (2) They appear to have been assigned to appellant after the failure of appellees to pay at maturity the first coupon

interest note.    Hence, under the express provisions of the mortgage, the principal note had become absolutely due and payable before it was transferred by assignment to appellant.

There was no issue in regard to an innocent or good-faith purchaser tendered by appellant's merely replying under the general denial to the paragraphs of the answer which 9.  set up as a defense the alleged fraud of Junkens in procuring the execution of the notes.    If appellant were a good-faith purchaser before maturity of commercial paper, the burden was upon him affirmatively to plead that fact by a reply in avoidance of said paragraphs, and to prove the same on the trial.    *Giberson* v. *Jolley* (1889), 120 Ind. 301; *First Nat. Bank* v. *Ruhl* (1890), 122 Ind. 279; *Shirk* v. *Neible* (1901), 156 Ind. 66, 83 Am. St. 150; *Winters* v. *Coons* (1904), 162 Ind. 26.

Counsel earnestly insist that the evidence in the record wholly fails to support the special finding upon the issue that the notes and mortgage were procured through 10.  the fraud of Junkens.    They contend that inasmuch as the case at bar is a suit in chancery, triable by the lower court without the intervention of a jury, it therefore becomes our duty under section eight of an act of the legislature approved March 9, 1903 (Acts 1903, p. 338), carefully to consider and weigh the evidence, and if, in our judgment, it does not fairly support the finding, we must, under the provisions of said section, reverse the lower court and render a judgment according to the clear weight of the evidence.

It is true that the evidence in the record is in part documentary, but principally it consists of that which was given orally by witnesses who testified before the trial court. This oral evidence on many of the material points in issue is quite conflicting, and, under the circumstances, a question in regard to the credibility to be accorded to each of the

respective witnesses was presented for the determination of the trial court.

In the appeal of *Parkison* v. *Thompson* (1905), 164 Ind. 609, the provisions of the section of the statute in question were thoroughly considered, and under the interpretation therein accorded to them we held that in a cause where a question of fact or facts depends on oral testimony for support, and there is a substantial conflict in such testimony, we will not undertake to reconcile the conflict or weigh such evidence. The court in that case on page 626 said: "Were we to attempt, under such circumstances, to reconcile and weigh the evidence and interpose our judgment in the case for that of the lower court, great injustice might result." The same section was again under consideration in *Hudelson* v. *Hudelson* (1905), 164 Ind. 694, and the holding in the case of *Parkison* v. *Thompson, supra,* was reaffirmed and followed.

It is true that this court, in *Egbert* v. *Rush* (1856), 7 Ind. 706, said: "As a chancery cause, this court will not feel bound to respect the finding of the circuit court as it would the verdict of a jury or the finding of the court at law. Having all the evidence upon which the court below acted, we will weigh it and draw our own conclusions." This latter case, however, was tried in the lower court in 1848, when the practice in chancery cases and in actions at law was different. Under the practice in force prior to the adoption of our civil code of 1852, a case in chancery was submitted and tried in the lower court upon depositions taken out of court. Therefore, under the circumstances, the trial court was neither in a better position, nor had it any greater facilities, for testing the credibility of the witnesses whose testimony was introduced through depositions, than were afforded the judges of an appellate court. Consequently a chancery case in the Supreme Court under the old practice was decided *de novo* upon the evidence therein certified, and a final judgment rendered thereon by the

court, without remanding the cause for a new trial. *Miller* v. *Evansville Nat. Bank* (1884), 99 Ind. 272. In the latter case this court, in commenting on the old rule of practice under which an appellate court in a chancery proceeding weighed the evidence and gave judgment accordingly, said: "But practice demonstrated that this rule was of uncertain enforcement, and it is a well-known fact that the judge who saw the witnesses, heard them testify, and observed their demeanor on the witness-stand, was much better enabled to weigh the evidence and come to a correct conclusion than this court could possibly be by only seeing the record of the evidence, which is seldom full and frequently imperfect."

In *Lake Erie, etc., R. Co.* v. *Griffin* (1886), 107 Ind. 464, the court, in referring to the rule asserted in *Egbert* v. *Rush, supra,* and to the change in the practice in equity cases as made under our civil code, said: "We know of no reason, therefore, for holding now that we are not bound to give the same respect to the finding of the trial court, in a suit in equity, that we have always given to the verdict of a jury, or the finding of a court, in an action at law." Since the holding in these latter cases it has been generally affirmed by this court, down to *Mead* v. *Burk* (1901), 156 Ind. 577, that the rule that we will not weigh the evidence in a case on appeal finds no exception in suits in equity.

The proposition with which we have to deal is not as to whether we shall yield obedience to the statute in controversy, but the question raised is one which requires us to discover, by a reasonable interpretation, to what extent the statute in question is intended to abrogate or change the rule, applicable alike in suits in equity and in actions at law, to the effect that we will not disturb the judgment of the trial court on the weight of the evidence. We need not elaborate, however, in this appeal in regard to the construction or interpretation which should be placed upon the statute, for that question was fully determined in *Parkison* v. *Thompson, supra.*

Upon the interpretation of the law the decision in the appeal of *People* v. *Fish* (1891), 125 N. Y. 136, 26 N. E. 319, may be said to support our holding in *Parkison* v. *Thompson, supra.* By a provision of a statute of New York pertaining to criminal procedure, the court of appeals of that state was authorized to order a new trial on an appeal in cases of homicide, wherein the defendant had been sentenced to suffer death, provided that court was satisfied that the verdict of the jury was against the weight of the evidence, or against law, or that justice required a new trial. In the case above cited, Earl, J., speaking for the court on the construction of this statute, said: "It does not confer upon the court power arbitrarily to grant a new trial whenever it thinks justice may require it, but its jurisdiction in such a case is to be exercised according to settled rules of law. If there is a conflict in the evidence or different inferences may be drawn therefrom, it is the province of the jury to weigh the evidence and determine the facts, and their determination should not be interfered with unless we can see that such determination was against the clear weight of the evidence or was influenced in some way by passion, prejudice, mistake, perversion or corruption."

In *Smith* v. *Kruger* (1870), 33 Ind. 86, the court affirmed that it would not interfere with the finding of the trial court unless the same was "clearly against the evidence, and can be considered only as the result of passion, prejudice, or a palpable misapprehension of the facts."

Did the case at bar disclose to our satisfaction that the finding of the lower court was clearly against the weight of the evidence, or that such finding "was the result of passion, prejudice, mistake or corruption," then certainly, under such circumstances, it would be our duty, in the interest of justice, to reverse the judgment. As previously said, the evidence herein is conflicting. The finding of the court may, in the main, be said to be supported by that given on the trial by appellees in their own behalf. Their testimony,

however, when considered together with the reasonable inferences which may be drawn in their favor from the testimony of adverse witnesses, fully sustains the finding of the court on all material points. To sum up the evidence in the case, or to point out the inconsistencies with which a portion of that given on behalf of appellant may be said to be impressed, would unnecessarily extend our opinion and subserve no useful purpose. The question of the credibility and weight to be accorded to the several witnesses who testified before the trial court was one to be determined by that tribunal. It was its province and duty to reconcile the conflicting testimony of the witnesses, if possible, so as to give credit to all. If this could not be done, then it had the right to determine whom it would believe and whom it would discredit. This duty, we may assume, the court discharged.

Discovering no available error the judgment is affirmed.

Montgomery, J., concurs in the result.