SRIVER *v.* MALEY.

[No. 18,971. Filed June 25, 1958.]

620

*Bernard S. Schrager* and *Isadore D. Rosenfeld,* both of South Bend, for appellant.

*Louis C. Chapleau* and *Farabaugh, Chapleau & Roper,* all of South Bend, for appellee.

CRUMPACKER, J.—This is a tort action brought by the appellee Alton Maley, against the appellant Robert O. Sriver, for damages alleged to have been suffered by said appellee by reason of the fact that he was induced by fraud on the part of the appellant into buying 137 shares of the capital stock of Hoosier Pump and Well Supply Co., Inc., hereinafter called the corporation. The case was presented to the trial court by an amended complaint wherein it is alleged that the appellant knowingly made certain false representations with the intention of deceiving and inducing the ap-

pellee to purchase said corporate stock and as a result thereof the appellee relied upon said representations and purchased said stock to his damage in the sum of $20,000.00. Issue was joined on this complaint by answer agreeable to Rule 1-3. Trial was to the court which found the facts specially, stated conclusions of law thereon favorable to the appellee and gave him judgment in the sum of $6,755.69.

The appellant challenges this judgment on four grounds. First, he says that the fraud charged against him is solely that of making false representation in reference to certain debts owing by the corporation and that there is a total lack of proof thereof. Second, he contends that in no event was the appellee justified in relying on any representations made by him because the undisputed evidence discloses that he personally investigated the affairs of the corporation and was fully aware of the facts concerning which the alleged false representations were made. Third, he asserts that there is a complete lack of proof that the appellee relied on any representations made by him or that he would not have bought the stock in question if such representations had not been made. Fourth, he says there is no evidence that the appellee was damaged in any respect whatsoever by the transaction.

The briefs of counsel disclose evidence tending to prove that on May 3, 1955, the appellant and the appellee entered into a fully executed written contract whereby the appellee purchased from the appellant all of his stock in the corporation for which the appellee paid the appellant the sum of $41,100.00. One hundred thirty-seven shares of said stock were involved in the transaction and that constituted all of the capital stock of the corporation then outstanding except for 30 shares owned by one Phillip C. Stradley. Shortly prior to May 3, 1955, the appellee took employment with

the corporation during which time he went over its inventory and determined for himself the approximate value thereof. He also, at that time, estimated the value of the corporation's fixtures, trucks and other business equipment. He did all this for the purpose of gaining some idea of the value of the property represented by the corporate stock he was contemplating buying. In examining the inventory he observed a quantity of heavy soil pipe which the corporation had purchased from the Russell Pipe and Foundry Company and understood that it was paid for because he had theretofore conferred with the appellant and was informed that the corporation had only one account payable and that was a current 90-day account owing Flint and Walling Manufacturing Co., Inc. Also prior to May 3, 1955, he was shown and examined a statement of the corporation's financial condition as of January 1, 1955, prepared by one Robert Verstring, a chartered public accountant. This statement showed that as of that date the corporation had $124,190.19 current assets against only $56,787.00 in current liabilities, including an item of "accrued Federal Income Taxes" in the sum of $5,627.81. Indebtedness owing to Russell Pipe and Foundry Company in the sum of $2,606.01 for the heavy soil pipe the appellee had noticed in the inventory was not shown in said statement because it had not yet been purchased. Said statement represented the net worth of the corporation to be $79,648.40 and, on the basis of 167 shares of stock outstanding, the value per share in the sum of $476.93. Fortified with this information on May 3, 1955, the appellee repaired to the office of Bernard S. Schrager, the appellant's attorney practicing in South Bend, Indiana, where he met the appellant preparatory to negotiating and executing a contract for the sale and purchase of the corporate stock in question. In dis-

cussing the provisions of the contract the appellee said there were some things he wanted to put in it. Schrager said, "What things," and the appellee replied, "Well, several things. One, that all the taxes were paid. Nobody can come back on me for taxes and that all the old invoices, passed invoices, everything, was paid. Everything other than current Flint Walling bills." Schrager then said, "I guess we can say that," and Schrager looked at the appellant who nodded his head "yes." As the result of these representations, together with his own investigation and the statement furnished him by the appellant showing the financial condition of the corporation as of January 1, 1955, which, he was assured, was unchanged on May 3, 1955, he bought the stock in suit and paid the appellant the agreed price thereof in the sum of $41,100.00. It later developed that the representations made by the appellant to the effect that the corporation had no current indebtedness except the Flint Walling bill were false and in truth and in fact when they were made the corporation was delinquent in the payment of its income taxes and owed the Federal Government the sum of $5,627.81 and also was indebted to Russell Pipe and Foundry Company in the sum of $2,606.01, all of which the corporation was eventually required to pay.

We believe that the foregoing evidence justified the trial court in concluding that the appellant induced the appellee to purchase the corporate stock in question through fraudulent representations as to the financial condition of the corporation on May 3, 1955. At the time such representations were made the appellant was the president, chief stockholder and general manager of the corporation and must be charged with the knowledge that it owed $8,233.82 in addition to the Flint Walling account and it was clearly the appellant's duty to disclose such facts rather than

falsely represent that there was no such indebtedness. *Givan* v. *Masterson* (1899), 152 Ind. 127, 51 N. E. 237.

We see no merit in the appellant's contention that the appellee was not justified in relying on the representations in question because he had investigated the facts himself and had been given a statement prepared by a public accountant which disclosed the corporation's financial condition and had free access to its books. It is true that the financial statement referred to showed that the corporation's income taxes for 1954 in the sum of $5,627.81 had not been paid as of January 1, 1955. Such taxes were not due however until April 15, 1955, and on May 3, 1955, the appellant represented that they had been paid and it is a reasonable inference that the appellee concluded that they had been paid since his investigation. The Russell Pipe Company bill was not reflected in the financial statement of January 1, 1955, and there is no evidence that it was called to the appellee's attention in any other manner prior to May 3, 1955. Furthermore, there was no opportunity for the appellee to investigate the situation after the representations were made on May 3, 1955, and before the consummation of the deal the same day. The fact that the appellee had made some investigation on his own account prior to May 3, 1955, and did not rely wholly on the appellant's representations does not, of itself, preclude a recovery. *Amsbury* v. *Harper* (1928), 87 Ind. App. 119, 157 N. E. 292.

Likewise we see no merit in the appellant's third proposition that there is no evidence tending to prove that the appellee relied upon the appellant's alleged false representations. It is our opinion that to establish reliance it is not essential that the appellee should have testified in so many words, "I relied on his statement," but it is sufficient

to show the fact of reliance by other evidence from which such an inference can be drawn. The correct rule is stated in 37 C. J. S., Fraud, §102, as follows: "Such reliance, however, may be inferred from other facts, although not directly proved; for example, it will be assumed, in the absence of evidence to the contrary, that a transaction was induced by a representation material to it." The deliberate misstatement as to the debts of the corporation to the extent of $8,233.82 must be considered material to the transaction and, there being no evidence to the contrary, we assume that such misstatements were relied on.

The appellant's final proposition to the effect that there is no proof that his alleged fraud damaged the appellee presents a more serious problem. The accepted rule is that fraud without damage is not actionable and where there is damage it is measured by the difference between the value of the property as represented and its actual value at the time of purchase. *Williamson* v. *Brandenberg* (1892), 133 Ind. 594, 32 N. E. 834; *Board, etc.* v. *Garrigus* (1905), 164 Ind. 589, 73 N. E. 82, 74 N. E. 249. The property involved in this litigation is shares of corporate stock. We take judicial notice of the fact that the value of a share of stock in a corporation may not be affected in direct ratio to the fluctuation in the corporation's net worth. However, it is stated in 18 C. J. S., Corporations, §415: "There is no presumption that the face value of the stock is its real value; and as a general rule the manner of ascertaining its value, as a basis for estimating damages, is to show its market value at the time and place it should have been delivered, and not as of the date of the contract. Neither the book value nor the intrinsic value of the stock should enter into the estimate, unless it has no market value, in which case resort may be had to

sources other than the market value to determine its actual value, and the property of the corporation as compared with its liabilities at that time may be shown."

We believe the evidence in this case justifies the inference that the net worth of the corporation on May 3, 1955, was represented to the appellee to be $79,648.40, which figure reflects or takes into consideration the debt of $5,627.81 due the Federal Government for income taxes. There were then 167 shares of stock outstanding and $79,648.40 divided by 167 equals $476.93—the value of each share. The net value of the corporation however was not $79,648.40 as represented because that figure fails to reflect an indebtedness of $2,606.01 due Russell Pipe Company for heavy soil pipe purchased since the financial statement was made from which those figures were taken. We are unable to say from the evidence in this case that the increase in corporate indebtedness due to the Russell Pipe Company account is offset by an increase in its inventory in a like amount. Therefore, it appears that the actual net worth of the corporation was $2,606.01 less than represented or $77,042.39. This figure divided by 167, the number of shares outstanding, gives us $461.33 the value of each share the appellee actually received. The difference between the represented value of the stock per share and the actual value is $15.60, which multiplied by the number of shares purchased by the appellee fixes his damages at $2,137.20.

This cause is remanded to the St. Joseph Superior Court No. 2 with instructions that unless the appellee remits $4,618.49 of the judgment herein within 30 days from the date hereof the appellant's motion for a new trial shall be sustained. In the event such re-

mittitur is so filed, then judgment in the sum of $2,-137.20 is sustained.

NOTE.—Reported in 151 N. E. 2d 518.