JUDGE ROBERTSON
delivered the opinion of tiie court:
In the State of Ohio, on the 20th of March, 1865, W. A. Parsons executed and delivered a note or bill, promising to pay to B. P. Hinman or order two thousand seven hundred and sixty-seven dollars and eighty-five cents, eighteen months after date, at the Commercial Bank of Cincinnati; and on the same day J. W. Holin *271 shade executed a similar document for the same amount, payable at the same time, to his own order, at the Third National Bank in Cincinnati.
Each of these documents having been indorsed and delivered in Cincinnati to J. G. Carlisle, of Covington, he afterwards, for value and not mere accommodation, indorsed them, in Covington, Kentucky, to Jos. Chambers of that city, and three months afterwards executed a mortgage on three tracts of land to secure his liability as indorser.
It is agreed, that, by the law of Ohio, each of those papers had the legal character and effect of a bill of exchange; while, if made payable in Kentucky, there having been no negotiation of the bills in any bank chartered by Kentucky, they would have been simple promissory notes only. Chambers, treating them as bills of exchange, proceeded, by regular protest and notice, as in cases of such bills, according to the law of Kentucky, to make Carlisle responsible at once, without any previous action against the drawers, which would have been indispensable if his indorsements were assignments of promissory, notes; and it appears probable, that, had he diligently prosecuted such suits, he might have made thereby the whole amount, and that now each drawer is insolvent.
Carlisle, insisting that his indorsements in Kentucky of what, if payable here, would not have been commercial paper, were only assignments of notes, which, according to her law, did not make him responsible unless the obligors had been diligently prosecuted to insolvency, therefore claimed exoneration; and, consequently, this suit in. equity was brought for obtaining personal judgments against him and enforcing payment by a sale of the mortgaged property.
*272 The circuit court, adjudging that the notes were bills of exchange and indorsed as such, gave judgment for the principal and interest of each bill, and decreed a sale of two of the tracts mortgaged. Carlisle appeals from that decree; and Menzies and Scott, made parties as claimants of those two tracts by sub-purchase, also appeal.
As payment was to be made in Ohio, the lex loci solutionis fixed the character of the documents indorsed by Carlisle to Chambers; and, as that law made them bills of exchange, an universal law of comity requires their recognition as such between the original parties to them.
The law of Kentucky undoubtedly regulates the distinct contract of indorsement and the liability of the indorser. It fixes the character and extent of the liability implied by the indorsement, the protest, notice, and damages ; but it does not determine or change the legal quality or character of the thing indorsed. If, by the law which controls its obligation and defines its character, it is a bill of exchange, the indorsement is not presumptively per sc an assignment of a promissory note, and the law regulating the liability of assignors does not necessarily apply to it; but any presumption that the parties understood the true character of the thing contracted about may be repelled by extraneous proof that they understood it to be a promissory note, the indorsement of which they expected to operate as an assignment,
As to all who became parties to the bills in Ohio, we must presume knowledge of the law of that State; and, consequently, that they knew that these documents operated as bills of exchange, and so this court adjudged in Goddin vs. Shipley, 7 B. Mon., 575; Young vs. Harris, 14 Ib., 558; and Short vs. Trabue, &c., 4 Met., 299.
But, on the question, what presumption arises on an indorsement of such a bill in a foreign State, whose law *273 treats it as only a promissory note, and where both indorser and indorsee reside, none of those eases shed any judicial light. One of them expresses doubt, and another indicates, by clear intimation, that, in such a case, the prima facie presumption would be that the parties to the indorsement considered the paper as a simple promissory note, and negotiated it as such, and not as a bill of exchange.
It was decided, however, in England, in the case of Rothchild vs. Curry (1 Ad. & El. N. S., 43), that an indorsement is a new bill, payable where the indorsed bill was made payable, and governed by the law of that place; and Shanklin vs. Cooper (8th Blackford's Indiana Reports) followed that decision. But the reason assigned for these adjudications was false and indefensible, and has been properly repudiated by this court in Short vs. Trabue, supra; and the same Indiana court, in the case of Hunt vs. Standardt (15 Indiana Reports, 15), overruled Shanklin vs. Cooper, and decided that the indorsement by one citizen of Indiana to another citizen of that State, made therein, of a note executed and payable in New York, where it was a bill of exchange, implied only an assignment of a simple promissory note, which was not commercial paper by the law of Indiana. The ground of this decision is, that the citizens of Indiana, not presumed to know the peculiar law of New York, should be presumed to have ascribed to the note the character stamped on it by their own local law, with which they were presumed to be acquainted ; and, without any other evidence indicating the understanding of the parties to the indorsement, we would concur with that court in the application of right reasons to the facts of that case. The facts of this case are, however, in some respects, different from those in that case.
*274 When the bills were indorsed to Carlisle, in Cincinnati, he took them according to the law of Ohio, which, as he contracted under that law, he must be presumed to have then known; and his indorsee was a citizen of Kentucky in sight of Ohio, and therefore had peculiar means of knowing the character of the bills by the law of Ohio.
These extraneous circumstances neutralize the presumption which might otherwise arise from the place of indorsement and the domicils of the parties to it, as in the case of Hunt vs. Standardt, and leave the contract of indorsement without any preponderating presumption of the understanding of the parties as to the character of the things indorsed, and the legal effect of the indorsements.
For the solution of this perplexity we must, therefore, look to other extrinsic circumstances; and we find the .following:
.1. The mortgage describes the bills as mere promissory notes, and does not call them bills of exchange or characterize them as such. This is a significant fact, apparently indicating that the parties treated them as promissory notes, as by the law of Kentucky they would have been if they had been payable here
2. The petition does not call them bills of exchange, but calls them notes. The answers charge, in effect, that they were negotiated between indorser and indorsee, in the character by which the law of Kentucky alone would define them; and, although three amended petitions were afterwards filed, yet neither of them intimates that they were indorsed as bills of exchange.
From these considerations, in the absence of any other countervailing fact than what has been stated, the judicial conclusion is, as we think, that, when indorsed in Kentucky, the parties looked to the law of their own State for the character of the notes, and considered the *275 indorsements of them as assignments governed by that law as to the duties of the assignee and the legal liability of the assignor.
Thus, considering the intent and attitude of the parties, the failure to sue the obligors exonerated the assignor; and, in this phase of the case, the judgment in personam against Carlisle is erroneous.
But, nevertheless, the appellee’s counsel insist that the decree for sale under the mortgage is right, because, as they argue, the mortgage constructively-waived any suit against the obligor,, and guaranteed payment by them whenever the notes became due.
*. The following is a copy of the condition of the mortgage : “ Provided always, that if the said J. G. Carlisle, B. P. Hinman, W. A. Parsons, and J. W. Holinshade, shall cause to be paid unto the said Joseph Chambers two promissory notes for two thousand seven hundred and sixty-seven dollars and eighty-five cents each, dated March 20, 1865, and due in eighteen months from date, with interest from date, one of which notes being made by W. A. Parsons, and indorsed by said Hinman and said Carlisle, and the other being made by said Holinshade to his order, and indorsed by him and by said Car-lisle, then these presents shall be void.”
This condition, interpreted literally, would impose jointly, on all the persons named, the duty of paying or causing to be paid both notes, with interest from their, date, and as soon as they became due, and without any suit or personal demand of the obligor. Such a construction, imposing on Carlisle as assignor such onerous and unusual duty, and so far beyond his legal responsibility, would be too absurd to be countenanced, and especially as this contract was not consummated by Mr. Carlisle’s relinquishment until nearly four months after Carlisle’s *276 conditional liability, much more circumscribed, had been irrevocably fixed.
Construing the condition, as we should do, by the occasion, the subject-matter, and only presumable object, it means that Carlisle, contingently responsible ultimately as assignor, made the mortgage for securing his own legal liability, and not intending to take the whole burden from the antecedent parties, nor to dispense with all demand from them by suit or otherwise, only intended and virtually stipulated that, all being successively liable’.in their legal order, if his assignee should make, in due time, personal demand of the obligors, and should, if they failed to pay, diligently try to coerce payment by suit, and should still fail (against which failures he meant to guarantee), then he would himself pay.
In other words, the condition was not intended to increase Carlisle’s liability; but, fa-irly and consistently construed, intended that, if the assignee should, after proceeding according to law, fail to obtain payment, the mortgage would assure full payment by Carlisle.
We therefore conclude that the court also erred in decreeing an enforcement of the mortgage.
Wherefore, the entire judgment' of the circuit court is reversed, and the cause remanded, with instructions to dismiss the appellee’s petition.