## THE NEW YORK SECURITY AND TRUST CO. ET AL., TRUSTEES, *vs.* WILLIAM DAVIS.

*Mortgage of Land in this State to a Non-Resident is a Contract Governed by the Law of this State—Usury—Waiver of Defense of Usury.*

A mortgage of land in this State to secure the payment of a promissory note made here by a resident of this State to a resident of another State, no place of payment being mentioned, is a contract to be performed here and its validity is to be determined by the law of this State.

If such mortgage note provides for the payment of interest at a rate usurious under the law of this State, the mortgagor is entitled to have the usurious interest paid by him credited upon the debt when the property is sold under foreclosure and the proceeds of sale are in Court for distribution.

When a mortgagor in his answer to a bill to foreclose a mortgage consents to a decree for the sale of the property he does not thereby waive his right to set up the defense of usury, when the proceeds of sale are brought into Court for distribution.

Appeal from an order of the Circuit Court for Howard County (JONES, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*William L. Marbury*, for the appellant, submitted the cause on his brief.

1. The mortgage debt was a contract which, according to the intent and expectation of the parties thereto, was to be performed in the State of New York. In such case the validity of the contract must be determined by the laws of that State. The legal rate of interest in New York was 7 per cent, and therefore the contract was not usurious.

While the rule is, that the validity of a contract is to be determined by the law of the place where it is made, yet, where it appears that the contract, while made in one place, was expected to be executed in another, the law of the place where

it is to be executed or performed governs.   On this principle it has been frequently held that the validity of a mortgage debt which is to be paid in another State than the one where the property is located is to be determined by the law of the State where it is to be paid.   *Dolman* v. *Cook*, 14 N. J. Eq. 56; *De Wolf* v. *Johnson*, 10 Wheaton, 367; *Coghlan* v. *So. Car. R. R. Co.*, 142 U. S. 101; *Eastwood* v. *Kennedy*, 44 Md. 572; *Shipmen* v. *Bailey*, 20 W. Va. 144.

The mortgage notes do not state upon their face where they are to be paid, and in the absence of any facts showing what the intention of the parties was, of course it would be presumed they would be paid in the State of Maryland.   It does appear, however, that the payee of the notes, as already stated, was a resident of the city and State of New York at the time these notes were given.   Now in the absence of any special agreement to the contrary, a well-known rule of law is that the debtor must seek the creditor and make payment to the creditor at his place of residence.   Knowledge of the law being presumed, of course it must be assumed that the parties knew this rule and expected to be governed by it ; so that in effect it was an agreement to pay these various amounts of money in the State of New York at the residence or place of business of the mortgagee.

2. The defense of " Usury " should have been set up in the answer.   It is true that it has been decided in many cases in this State, that usury does not make the mortgage invalid or interfere with its being enforced by foreclosure ; and for that reason it cannot be pleaded in bar of a sale ; and we do not contend that usury should have been, or could have been set up in the answer in this case for that purpose.   That, however, is a very different proposition from saying that it should not be set up in the answer at all in a case of this kind.   The Maryland cases it is true, hold, that the proper time for raising the question of usury is on the distribution of the proceeds of sale, the ordinary method being by exceptions to the audit. But it will be found, we think, that these cases were all cases where the sales were made by virtue of power of sale contained

in the mortgage, or, by virtue of the covenant to submit to decree of sale in the event of default, and were *ex parte* proceedings in which the opportunity to answer was not afforded to the mortgagor at all and he was not called on to say whether he owed the amount claimed by the mortgagee in the proceedings, or not; he never had a chance to say whether he owed it or not, and therefore was not considered to waive his right to raise the question of usury by failing to set it up in his answer.  *Smith* v. *Meyers*, 41 Md. 425.

3.  The mortgagor (Davis), is equitably estopped by his conduct, from setting up the plea of usury.

4.  Calculations of interest in the second auditor's account are, on their face, incorrect.

*James A. C. Bond* (with whom were *John G. Rogers* and *Francis Neal Parke* on the brief), for the appellee.

The only contract in the case between the parties shows an agreement only for the payment of 7 per cent on the balance of the purchase money without reference to the place of performance, and it would be a strange rule of construction for the Court to read into this contract the State of New York and a rate of interest of 7 per cent per annum.  " It is well settled as a general rule that the *lex loci contractus* must govern the rate of interest where the contract does not provide for its payment in another jurisdiction, or when the contract has nothing on its face, and there is nothing attending the making of it indicating it to be performed in another jurisdiction." *Beach on Modern Law of Contract*, sec. 606.

" Usury is a moral taint wherever it exists and no subterfuge should be permitted to conceal it from the eyes of the law.  This, it is said, is the substance of all the cases.  As a principle of international jurisprudence, no State is bound or ought to enforce or hold valid in its Courts of justice any contract which is injurious to its public rights, offends its morals, contravenes its policy or violates a public law.  *Dickinson* v. *Edwards*, 77 N. Y. 573, 33 Am. Rep. 671, 2 Kent Com., p. 458; *Varnum* v. *Camp*, 13 N. J. L. 326, 25 Am. Dec. 476; *Pacific Co.* v. *Hill*, 56 L. R. A. 168."

Our Court will not aid an usurer to violate successfully the letter and spirit of our Constitution and statutes and thwart the declared policy of the State. *Gardner* v. *Lewis*, 7 Gill, 394; *Smith* v. *McAtee*, 27 Md. 439; *Appeal Tax Court* v. *Patterson*, 50 Md. 374.

Is there any reason why the usurer in this case should not be visited with the penalties of the law? or that the law should not be rigidly enforced? Let the sorrowful pages of this record answer for this appellee, who has long staggered and at length fallen in his old age with strength and fortune spent. In 1871 Davis bought of Seaman for $20,000 two hundred and seven acres of land at Marriottsville, Howard County. He paid down in cash $9,000 and for the residue of the purchase money of $20,000 he gave the mortgage in this cause. From January 10, 1871, to January 10, 1896, he paid to the appellants $17,600, and then he stopped. He could stagger no longer. A sale for $12,050 under the mortgage follows, and the mortgagee, or her successors, becomes the owners under the sale of the entire mortgage property. Truly the borrower has been the servant of the lender. The appellee at one time had a farm worth $12,050, but it is now the farm of the appellants; he had $17,600, but it has likewise gone to the appellants, and along with his part payment of $9,000 is in the pockets of the appellants. All is yielded up, and yet the appellants move the Court for a judgment *in personam* for the deficiency of $2,023.86 under the first audit, which allowed the extortionate interest. In his extremity the appellee sought the laws of his State for protection and asked that $11,000, with the lawful interest thereon, be charged against him, but that what was usurious be not allowed.

Briscoe, J., delivered the opinion of the Court.

This proceeding was instituted in the Circuit Court for Howard County, sitting in equity, to foreclose a mortgage dated the 10th day of March, 1871, to secure a loan of $11,000, and executed by William Davis and others, defendants, to Caroline E. Parks, of the State of New York, execu-

trix of Charles E. Parks, the predecessor in the trust, of the appellants.

The defendants answered the bill and on the 20th of February, 1900, upon the written assent of the defendants, a decree was passed directing the mortgaged property to be sold, and the money arising on the sale to be brought into and to be distributed under the direction of the Court. The property sold for the sum of twelve thousand and fifty dollars, and the sale was duly ratified on the 15th of September, 1902. There were two audits filed in the case. The first was stated according to the contention of the appellants, and showed a deficit of $2,023.86, due the trustees, after applying the proceeds of sale, and the allowances for costs and expenses of sale. On the 14th of May, 1901, the appellee, Wm. Davis, filed exceptions to the first audit, stating that the charge of interest at the rate of seven per cent, as set forth in the mortgage is usurious, and having paid interest on the mortgage at the rate of seven per cent for ten years, he is entitled to have the payments made by him in excess of the legal rate of interest, according to the law of Maryland, credited as of the time of the payment upon the principal of the mortgage debt. An answer was filed by the appellants to these exceptions, in which among other things the defense was relied upon, " that the mortgage notes in the case being contracts intended by the parties thereto to be executed and performed in the State of New York, their validity as regards the rate of interest to be paid must be determined by the laws of the State of New York in force at the time the notes were made, and that the legal rate of interest in the State of New York at that time was seven per cent per annum." On the 8th day of April, 1902, the exceptions filed to the ratification of the auditor's account by the appellee were sustained and a new account was directed to be made. On the 28th day of June, 1902, the exceptions to the second audit were overruled and the account having been finally ratified and confirmed this appeal has been taken.

There can be no question that under the evidence disclosed by the record that the contract sought to be enforced in this

case, is a Maryland contract and must therefore be construed according to our Maryland law.   The original agreement for the sale of the property which is located in Howard County, Maryland, and which is signed by a Maryland agent is to the following effect:

Jany. 10th, 1871.

"Received from William Davis and Samuel E. Davis the sum of one hundred dollars being so much paid on account of the purchase of the village of Marriottsville containing about 207 acres of land in fee-simple except one lot subject to ground rent of thirty dollars a year; which I as agent of Robert Seaman have sold to the said William and Samuel E. Davis for the sum of twenty thousand dollars ($20,000) payable as follows : Nine thousand dollars ($9,000) in cash when the title has been examined and found good for which a reasonable time is hereby granted, the balance to be paid with interest at seven per cent at any time within five years, and in such sums not less than $2,500 at one payment at the pleasure of the purchaser, interest payable yearly—taxes and ground rent to be paid by said Seaman up to the date of sale.

"Deed to be given on payment of the cash payment of nine thousand dollars (and a mortgage to be then executed by the purchasers to the said Robert Seaman for the credit payment or the mortgage shall be made to such person or persons as said Seaman shall direct.)   M. Bannon."

It further appears that the mortgage which was given for the debt and interest, was executed in Baltimore City and the affidavit was made by Mr. M. Bannon, the agent, at the same place.   The principal note is dated Howard County, Md., and the notes, which were given to cover the annual interest on the principal debt, bear the same date.

It is well settled that in the absence of proof to the contrary, the presumption is that a note is payable at the place where it is dated.   *Ricketts, &c.,* v. *Pendleton,* 14 Md. 321; *Boyd* v. *McCann,* 10 Md. 118.   The contract that is sought to be enforced in this case being then a Maryland contract, and it being conceded that the appellee paid interest on the principal debt at the rate of seven per cent per annum, he is clearly entitled to have the payments in excess of six per cent the legal rate of interest, as established by the law of this State, credited upon the mortgage debt.

But it is contended, that the appellee waived the right to set up the defense of usury by his answer to the bill consenting to a decree for a sale of the property, and is thereby estopped from urging it here.   It appears, however, from an examination of the decree that it in no way settled or decided the amount to be paid or the amount that was due upon the mortgage debt.  The decree simply directed, that the property be sold and the trustees bring into the Court the money arising from the sale, to be distributed under the direction of the Court.    In the case of *Woods* v. *Matchett, Admx.*, 47 Md. 395, it is distinctly said :  "The Code provides, it is true, the mode and manner in which a defendant may plead usury, but its provisions do not in any manner deprive him of the then existing remedies for relief against the payment of illegal interest, even though he may have failed to avail himself of the plea. *Art. 95, Code, secs. 4 and 5*.  It is well settled in this State that a Court of equity will grant relief against the payment of usurious interest, even after judgment, and further than this, that an *action at law* would lie prior to the Act of 1876, to recover excessive interest *actually paid*.   *Hitch* v. *Fenby*, 6 Md. 218; *West* v. *Beans*, 3 H. & J. 568; *Goldsmith* v. *Tilly*, 1 H. & J. 361; *Scott* v. *Leary*, 34 Md. 389; *Bandel* v. *Isaac*, 13 Md. 202."

Finding no error in the order of Court appealed from, it will be affirmed.

*Order affirmed with costs.*

(Decided December 4th, 1902.)