## BOMBOLASKI ET AL. v. FIRST NATIONAL BANK OF NEWTON, ILLINOIS.

[No. 7,993. Filed May 16, 1913. Rehearing denied December 11, 1913.]

1. BILLS AND NOTES.—*Place of Execution.*—*Presumptions.*—A note bearing date as of a certain time and place within the State, will be presumed in an action thereon to have been executed in the State. p. 175.

2. BILLS AND NOTES.—*Negotiability.*—*Note Payable in Another State.*—The negotiability of a note executed in this State, and by its terms made payable in another, must be determined by the law of the state where payable, hence a note executed in this State and made payable at a place in Illinois, which was negotiable by the law of that state, must be treated as negotiable in an action thereon in this State, although it does not conform to the standard of negotiability fixed by the statute of this State; and, being in the hands of a *bona fide* holder, it was not subject to defenses existing against the payee. (*Mix* v. *State Bank* [1859], 13 Ind. 521; *Patterson* v. *Carrell* [1877], 60 Ind. 128; *Fordyce* v. *Nelson* [1883], 91 Ind. 447; *Midand Steel Co.* v. *Citizens Nat. Bank* [1901], 26 Ind. App. 71; *Garrigue* v. *Kellar* [1905], 164 Ind. 676; and *Ray* v. *Baker* [1905], 165 Ind. 74, distinguished.) pp. 175, 178.

3. BILLS AND NOTES.—*Negotiability.*—The question of negotiability or nonnegotiability of a note is one of construction or interpretation to be determined from the form and conditions of the instrument in view of the law subject to which it was made, and, since the quality and character of a note as to being negotiable or nonnegotiabile attaches at the time and place of its inception and remains impressed upon it throughout its existence, the negotiability or nonnegotiability of a note in the state or country of its legal origin cannot be changed or affected by the subsequent transmission of such note to another jurisdiction. p. 178.

4. BILLS AND NOTES.—*Negotiability.*—*Determination.*—The negotiable or nonnegotiable quality of a note depends upon the law subject to which it was made, and in arriving at a determination of the question whether it is subject to the law of a jurisdiction other than that in which it was executed, or to the law of the place where executed, the intent of the parties as expressed in the obligation will control, and the provision in a note for its payment at a place outside the jurisdiction in which it was executed gives rise to the presumption that the parties intended its negotiability to be controlled by the law of the jurisdiction in which it was made payable, while a failure to specify a place of payment

warrants the presumption that it was payable in the jurisdiction where executed, and its quality will be determined by the law of that place.  p. 178.

5.  BILLS AND NOTES.—*Delivery.*—*Negligence of Makers.*—Where a negotiable note given for the price of a stallion was not to be delivered until nine persons having shares in the horse had signed it, but the payees were permitted to have possession of the note before it had been signed by all the shareholders, and were thus enabled through the negligence of the makers to transfer it to a *bona fide* holder for value, when it was signed by only six of the shareholders, the makers were not entitled to urge want of delivery as a defense in an action thereon, and the court did not err in sustaining demurrers to their answers setting up such defense. p. 182.

6.  BILLS AND NOTES.— *Defenses.*— *Nondelivery.*— *Answer.*— *Sufficiency.*—In an action by the *bona fide* holder of a note against the makers, an answer alleging that the note was executed for the purchase price of a stallion, with the agreement that the price was to be divided into ten shares of the value of $200 each of which one of the makers of the note was to take two shares and the remaining purchasers, including the other defendants, were to take one share each, that each purchaser should be liable on the note only to the amount represented by his share, that the note was not to be delivered or become effective until signed by all the purchasers, that the defendants signed the note but that the other purchasers did not sign it or pay their share, that defendants demanded a return of the note as soon as they discovered payee's possession, and that it was never delivered to the payee, did not proceed upon the theory that the execution was never completed by any delivery, but upon the theory that there was no valid delivery because possession was acquired before the note was signed by all the shareholders, and was insufficient to constitute a defense to the action.  p. 187.

7.  PLEADING.—*Non Est Factum.*—*Sufficiency.*—An answer in *non est factum*, to be sufficient, must deny the execution of the instrument under oath in terms so certain and specific as to warrant a conviction of perjury upon proof of the execution of the instrument.  p. 188.

8.  BILLS AND NOTES.—*Delivery.*—*Effect.*—While as a general rule, as between the original parties, the delivery of a negotiable instrument involves not only a change of possession, but also an intent on the part of the one making the delivery that the instrument shall by that act become effective, where the maker of such an instrument through negligence or misplaced confidence permits it to be in the possession of the payee so as to enable him to place it in circulation, the delivery is effective after the instrument has

reached the hands of a *bona fide* holder, regardless of the maker's intention at the time of parting with the possession.  p. 189.

From Perry Circuit Court; *C. W. Cook,* Judge.

Action by the First National Bank of Newton, Illinois, against John Bombolaski and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*John W. Ewing, William H. Roose* and *Dennis F. Seacat,* for appellants.

*Oscar C. Minor,* for appellee.

LAIRY, J.—Appellee sued appellants on a note and recovered. The note sued on was in the words and figures following:

"$667.00 Siberia, Ind., Nov. 16, 1906. On or before September 1st, 1908, we or either of us promise to pay to McCabe and Lindsey or bearer at the First National Bank of Greenup, Illinois, $667.00, Six Hundred Sixty-seven Dollars for value received and attorney's fees, with interest at the rate of 6% per annum, annually from date until paid without any relief from valuation or appraisement laws. (Signed) Felix Linetti, William Seiler, Mayes O. Cummins, John Bombolaski, George Seiler, W. E. Wells."

The complaint counts upon the note and alleges that the plaintiff was a banking corporation located and doing business in the town of Newton, Illinois. Facts are also alleged showing that the bank acquired title to the note in suit by endorsement in writing under such circumstances as would make it a *bona fide* holder if the note is negotiable as an inland bill of exchange. A statute of the state of Illinois on the subject of negotiable instruments is pleaded as a part of the complaint. If the note in suit is to be construed in accordance with this statute as interpreted and applied by the supreme court of that state, it is a negotiable note; but if it is to be construed in accordance with the statute of Indiana on the subject, it is not negotiable· for the reason that it is not payable at a bank within the State. §9076

Burns 1908, §5506 R. S. 1881; *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619; *Midland Steel Co.* v. *Citizens Nat. Bank* (1904), 34 Ind. App. 107, 72 N. E. 290. By certain paragraphs of answer to which demurrers were sustained, the appellants pleaded a defense against the payees of the note. These answers are not models of pleading and it might be difficult to determine from their averments whether they proceed upon the theory of fraud, or upon the theory of a warranty and its breach; but it is practically conceded by appellee that they state facts sufficient to constitute a cause of defense to the note if it is not a negotiable instrument. By sustaining the demurrers to these paragraphs of answer, the trial court held that the note in suit was negotiable.

We are thus confronted with a conflict of laws, and are required to determine whether the character and effect of this note as to its negotiable qualities depend upon the law of the State of Indiana where it was executed, or whether they depend upon the laws of the state of Illinois where the note by its terms was made payable. Where suit is 1. brought in this State upon a contract which does not disclose upon its face the place of its execution, it will be presumed that it was executed in this State. *Rose* v. *President, etc.* (1860), 15 Ind. 292; *Baltimore, etc., R. Co.* v. *Scholes* (1896), 14 Ind. App. 524, 43 N. E. 156, 56 Am. St. 307. The note in suit is dated at Siberia, Indiana, and suit is brought to enforce it in this State, and the presumption will be indulged that it was executed in Indiana.

To sustain the ruling of the trial court appellee asserts the law to be, that where a note is executed in one state and, by its terms, is made payable in another, the 2. question of its negotiability is to be determined by the law of the state in which it is payable and not by that of the state in which it was executed. To sustain its position it cites a number of Indiana cases bearing upon the question, but none of them are exactly in point. *Fordyce*

v. *Nelson* (1883), 91 Ind. 447; *Patterson* v. *Carrell* (1877), 60 Ind. 128; *Midland Steel Co.* v. *Citizens Nat. Bank* (1901), 26 Ind. App. 71, 59 N. E. 211; *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 74 N. E. 523, 69 L. R. A. 870, 108 Am. St. 324. In the opinion of the court in the case first cited, language is used which apparently is decisive of the question, but an examination of the facts of the case will show that the question was not presented for decision. The note sued on in that case was executed in the state of Missouri and was also payable in that state, and it is quite clear that the law of Missouri would control the question of its negotiability in a suit to enforce it in another state, where the statutes of Missouri were pleaded. The second case cited is similar to the first in that the note in suit was executed in the state of Ohio and was payable in that state. It was held that, as no statute of Ohio was pleaded, it would be presumed that the common law prevailed in that state, and that, the note sued on was not negotiable as an inland bill of exchange for the reason that such notes were not so negotiable by the law merchant, which formed a part of the common law, but are only made so by statute. The facts in the third case are similar to the facts in the case at bar, but the question here presented was not there decided. The note sued on in that case was executed in Indiana and was made payable at a bank in Pennsylvania, and was assigned to a bank at Kokomo, Indiana. The bank sued the maker but did not allege in its complaint, facts showing that a note of the character of the one in suit was negotiable under the statutes of Pennsylvania. The statutes of that state were not pleaded as a part of the complaint and no facts were alleged, therein showing that the bank was a *bona fide* holder of the note. The defendant by way of answer set up a defense against the payee of the note. As a reply to this answer the bank pleaded a statute of Pennsylvania on the subject of commercial paper and alleged that, under the decisions of the supreme court of that state construing that statute, notes

such as the one sued on had been held to be negotiable in that state. Facts were also averred showing that the bank was a *bona fide* holder of the note. The Appellate Court held that the reply was a departure from the theory of the complaint and that a demurrer thereto should have been sustained for that reason. The court did not decide whether the facts stated in the reply were sufficient to show that the note was a negotiable instrument. An examination of the facts presented by the case of *Garrigue* v. *Kellar, supra,* shows that the note in suit was executed in the state of Illinois and was by its terms payable at a bank in Indiana. Under the statutes of Illinois a married woman may, by contract, become liable as surety, but in Indiana a married woman is prohibited by statute from entering into any contract of suretyship. An action was brought to enforce the note in this State and Mrs. Garrigue answered, setting up her coverture and her suretyship.' As a reply to this answer, the statute of Illinois was pleaded and it was further averred that the note was executed and delivered in that state for money there loaned. It was held that the question of her liability on the note as surety was controlled by the law of the state where it was executed and not by that of the state wherein it was payable. The question for decision in this case depended upon the capacity of one of the parties to bind herself as a surety. Questions pertaining to the formal validity of a contract or the capacity of the parties are always determined by the *lex loci contractus*. For the reason stated, this case is not decisive of the question here presented. In the case of *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619, the note sued on, was dated at Lebanon, Indiana, and was payable at the Citizens Bank of Homer, Illinois. The statute of Illinois was not pleaded and the court would presume that the common law was in force in that state. The court held that the note was not negotiable under the laws of Indiana, but the question as to whether

it was negotiable as an Illinois contract was not presented or decided. The case of *Mix* v. *State Bank* (1859), 13 Ind. 521, may be distinguished in the same manner.

The question of negotiability or nonnegotiability of a note is one of construction or interpretation. It is determined by the form and conditions of the instrument 3. when considered in the light of the law subject to which it is made. The quality and characteristics of a note as to its negotiability or the want of it attach at the time and at the place such note has its legal inception. When its obligations attach and it comes into legal being, it is either negotiable or nonnegotiable, and the quality thus impressed upon it at its inception will not be altered, either by lapse of time or change of place. If a note is nonnegotiable in the state or country where it has its legal origin it can not become negotiable because at a subsequent time it is carried or transmitted to another jurisdiction.

Unquestionably the note in suit had its legal inception in Indiana, and if it is to be construed by the *lex loci contractus*, it was nonnegotiable in this State and it was 2. therefore nonnegotiable in Illinois or any other state. It was payable, however, in the state of Illinois and if the *lex loci solutionis* is to control its interpreta- 4. tion, it was negotiable in Indiana at the time of its inception, and it was therefore negotiable in Illinois or in any other state. Where a contract is made in one state and, by its terms provides for its performance in another, and the laws of the two states differ, no fixed rule can be announced by which it can be determined in every case which law shall apply. Where the parties have manifested an intention in good faith to make their contract subject to the laws of one or the other of such states such intention will be given effect in construing the contract and determining the reciprocal rights and duties of the parties thereunder; but if the question to be decided relates to the formal validity of the contract or to the capacity of the

parties, such question is to be determined in accordance with the *lex loci contractus* without regard to the intention of the parties. 2 Wharton, Conflict of Laws (3d ed.) §§427e-427n; *Scudder* v. *Union Nat. Bank* (1875), 91 U. S. 406, 23 L. Ed. 245; *Phoenix Mut. Life Ins. Co.* v. *Simons* (1893), 52 Mo. App. 357; *Hager* v. *National, etc., Bank* (1898), 105 Ga. 116, 31 S. E. 141; *Campbell* v. *Crampton* (1880), 18 Blatch. 150; *Matthews* v. *Murchison* (1883), 17 Fed. 760; *Hunt* v. *Jones* (1879), 12 R. I. 265, 34 Am. Rep. 635; *Roubicek* v. *Haddad* (1902), 67 N. J. L. 522, 51 Atl. 938.

In this case we are concerned only in determining the rights and obligations imposed by the contract, and we desire to limit our observations to the question before us. That the intention of the parties as gathered from the instrument itself shall have controlling weight in determining which of two conflicting laws shall apply to the construction of their contract seems to be supported by reason and possibly by the weight of authority, but the means of ascertaining such intention is not free from difficulty. The parties may stipulate in the contract that it shall be controlled by the laws of a particular state and where this is done in good faith, the question is free from doubt; but where this is not done, the question depends largely upon presumptions. Where a contract fixes no place for performance, the presumption is that it is to be performed in the same state in which it is executed and that the parties contracted in reference to the *lex loci contractus*. *Stickney* v. *Jordan* (1870), 58 Me. 106, 4 Am. Rep. 251; *New York Security, etc., Co.* v. *Davis* (1902), 96 Md. 81, 53 Atl. 669; *Dow* v. *Rowell* (1841), 12 N. H. 49; *Strawberry Point Bank* v. *Lee* (1898), 117 Mich. 122, 75 N. W. 444. If it is executed in one state and by its express terms is to be performed in another, the first presumption is overcome. In such a case, in the absence of facts and circumstances manifesting a contrary intention, the parties will be presumed to have intended that their contract should be governed by the law of the place of per-

formance. Wharton states the proposition thus: ''When there is a conflict between the law of the place where the contract was made and that of the place where it is payable, the great weight of authority accords with the position taken in *ante* §§450, 451, and favors the law of the place where the note or bill is payable, rather than that of the place where the maker's or acceptor's contract was made. This is true, not only as to the ultimate question of liability, but also as to the preliminary question of negotiability as affecting the question of liability  *   *   *''.  2 Wharton, Conflict of Laws (3d ed.) §451d; *Brabston* v. *Gibson* (1850), 9 How. 262, 13 L. Ed. 131; *Calhoun County* v. *Galbraith* (1878), 99 U. S. 214, 25 L. Ed. 410; *Holmes* v. *Bank of Ft. Gaines* (1898), 120 Ala. 493, 24 South. 959; *Goddin* v. *Shipley* (1847), 46 Ky. 575; *Freeman's Bank* v. *Ruckman* (1860), 16 Gratt. (Va.) 126; *Stevens* v. *Gregg & Co.* (1890), 89 Ky. 461, 12 S. W. 775; *Carlisle* v. *Chambers* (1868), 67 Ky. 268, 96 Am. Dec. 304; *Warren* v. *Lynch* (1810), 5 Johns. (N. Y.) 239; *Curtis* v. *Hutchinson* (1845), 4 Ohio Dec. 19.

Some of the cases state it as a fixed rule that the law of the place of payment controls the question of negotiability as affecting liability, while others hold that a presumption of intention to this effect obtains in the absence of facts or circumstances showing an intention to the contrary; but as such circumstances seldom, if ever, exist, the distinction is not usually of practical importance.  2 Wharton, Conflict of Laws (3d ed.) §451d.  In a few cases it has been held that the place of payment named in a note or bill of exchange is not to be regarded as important in determining which of two conflicting laws shall apply, but these cases are not in line with the current of decisions on this point. *Garrigue* v. *Kellar, supra; Staples* v. *Nott* (1891), 128 N. Y. 403, 28 N. E. 515, 26 Am. St. 480.  In the case first cited, the question presented related to the capacity of a married woman to contract as surety.  This question is one pertaining to the formal validity of the contract and its decision is always

controlled by the *lex loci contractus.* What was said upon this question can not be regarded as necessary to the decision as the question presented was properly decided upon other grounds.

From an extended examination of the authorities we have reached the conclusion that the negotiability of the note in suit as affecting liability is to be determined by the law of Illinois. If the note provided that its legal effect should be governed by the law of that state there could be no question; and, as we construe the decisions, a provision for payment in that states gives rise to a presumption to the same effect. It was, therefore, an Illinois contract, the same as though it had been both executed and made payable there, and, being negotiable under the law of that state, it must be held to be negotiable here even though it does not conform to the standard of negotiability fixed by our statute. In the hands of a *bona fide* holder it was not subject to the defense set up by the answers in question, and the court did not err in sustaining the demurrers thereto.

As heretofore stated, our statute in effect provides that notes payable to order or bearer in a bank in this State shall be negotiable as inland bills of exchange. It is suggested that the effect of the holding in this case will be to render this statute partially ineffective. At first blush, there might appear to be some merit to the objection suggested, but when we consider the effect of the decision in connection with the statute it will appear that the objection is without force. Our statute can be given no extraterritorial effect. It applies to all notes payable within this State regardless of the place where they were executed, and to all notes executed in this State which do not specify the place of payment, as all such notes are presumed to be payable in this State.

The court did not err in sustaining demurrers to the second and fifth paragraphs of answer. Both of these paragraphs set up a contract between the payees and nine persons

named, by the terms of which it was agreed that the ownership of the stallion purchased was to be divided into ten shares of $200 each, which shares were to be taken and paid for by the nine persons named in certain proportions stated. It is averred that under this agreement all of the parties who had agreed to take stock were to sign the note and it was not to be delivered until all had signed. It is also averred that only six of the number signed it and that it was carried away by the payees and was never signed by the other three, and that said note was never delivered to the payees or to any other person. These paragraphs are sworn to and proceed upon the theory that the note in suit was never delivered. These answers disclose that the payees were permitted to have possession of the note before it had been signed by all of the parties who had agreed to take shares, and that they were enabled, through the negligence of the makers in this respect, to place it in circulation. It is well settled that where one of two innocent persons must suffer on account of the wrongful act of a third, that one must bear the loss whose fault or negligence enabled the third person to do the wrong. A want of delivery can not be urged as a defense against a *bona fide* holder of a negotiable note where it appears that the note got into circulation through the fault or negligence of the defendant. *Gould* v. *Segee* (1856), 5 Duer. (N. Y.) 260; *Clark* v. *Johnson* (1870), 54 Ill. 296; *Shipley* v. *Carroll* (1867), 45 Ill. 285; *Kinyon* v. *Wohlford* (1871), 17 Minn. 239, 10 Am. Rep. 165.

Plaintiff's reply to the eighth paragraph of answer states facts sufficient to avoid the defense set up in that paragraph of answer. A reply in all respects similar was held sufficient in the case of *Bowen* v. *Laird* (1906), 166 Ind. 421, 77 N. E. 852. The demurrer to the reply was properly overruled.

## CONCURRING OPINION.

HOTTEL, J.—The note in suit is not payable "in a bank in this State" and hence is not negotiable as an inland bill of exchange under §9076 Burns 1908, §5506 R. S. 1881. It follows that if the question of the negotiability of such note is to be determined by the law of Indiana, that the prevailing opinion is wrong. In this case, appellee set up in aid of its cause of action a statute of the state of Illinois on the subject of negotiable instruments, and, by the provisions of this statute, the note in suit is negotiable and if the question of its negotiability is to be determined by the Illinois statute, the prevailing opinion is correct. Hence the real question to be determined is, Which of the two statutes must control and determine *the negotiable character* of said note? It will be observed that the prevailing opinion expressly limits the question to be determined to the *negotiability* of the note, and *the law of the state applicable to such question alone.*

We think the statement in the dissenting opinion, that the prevailing opinion holds that the note in suit "is an Illinois contract from its inception" is subject to modification. The effect of the holding in the prevailing opinion, as we understand it, is that, *for the purpose of determining the negotiable character of the note,* it must be treated as an Illinois contract from its inception, and that in determining such question we must look to the law of that state rather than the law of Indiana. This results from the fact that the maker of the note expressly agreed to perform his contract or pay the note at a bank in that state. The opinion impliedly, if not expressly, holds that by agreeing to pay or perform the contract in Illinois the maker did not deprive himself of the benefit of the *lex loci contractus* in so far as the question of the validity of the note and kindred questions might be involved in its collection. The holding that the *lex loci solutionis* rather than the *lex loci contractus* controls

the question of negotiability of a note is, we think, the holding in Indiana and in most jurisdictions, as evidenced by the authorities cited in the prevailing opinion.

We do not understand, as the dissenting opinion seems to intimate, that the prevailing opinion charges the maker of the note in suit with knowledge of the laws of the state of Illinois. It charges him with knowledge of the law of his own State. It is the law of Indiana that the *lex loci solutionis* controls the negotiability of an instrument, unless a different intent is expressed in the instrument itself. Hence when appellants agreed to pay the note in suit at a bank in Illinois, they thereby agreed that in its collection by a suit thereon, the law of that state might be invoked for the purpose of determining the question of its negotiability and that, if such law should be so invoked, that they would be controlled thereby whatever might be its provisions, and regardless of their knowledge of said provisions. In other words, appellants by their express agreement deprived themselves of the benefit of the law of their own state in the matter of the determination of the question of the negotiability of their note.

## DISSENTING OPINION.

ADAMS, J.—I am unable to concur in the majority opinion, holding that the negotiability of a promissory note is governed by the law of the place of payment. It is doubtless true that the maker of a promissory note may, by the use of apt words in the instrument itself, expressly contract as to the law that shall govern such note, and his contract will be given effect. But, I insist that a promissory note, executed in Indiana, without any stipulation as to the law governing the same, is an Indiana contract, and, if not made payable at a bank within this State, is not negotiable as an inland bill of exchange. When a note is. executed in Indiana, the law of this State, as to its negotiability, is impressed upon it at once, and such note cannot subse-

quently lose its character as an Indiana contract. One who executes a promissory note in this State is presumed to know the statute law of this State, but he is not presumed to know, nor is he bound by the statute law of the state of Illinois, and the statute law of Illinois is not read into, and does not become a part of the note. A note payable within this State, by §9076 Burns 1908, §5506 R. S. 1881, is made negotiable as an inland bill of exchange. If the note is not payable at a bank within this State, it is not negotiable by the law merchant, and this is true of a note executed in Indiana, payable at a bank in Illinois. *Ray* v. *Baker* (1905), 165 Ind. 74, 89, 74 N. E. 619.

The majority opinion, however, holds that a note executed in Indiana, by a citizen of Indiana, but made payable at a bank in Illinois, is an Illinois contract from its inception, and where suit is brought against the maker in Indiana, and the Illinois statute making all promissory notes negotiable in that state, is pleaded, with other facts, a special answer setting up a defense to the note is not good. It is a general rule that in the absence of an express stipulation to the contrary, a note will be construed according to the *lex loci contractus,* and, under our decisions, I do not believe that the naming of the place of payment in the contract furnishes an exception to the rule. The conclusion reached in the majority opinion is clearly based on the premise that, as appellants executed the note in suit, which was payable at a bank in the state of Illinois, it must follow that their intention was, that the note should be an Illinois contract from its inception, and governed by the Illinois statute, as to its negotiability. In law, as well as in logic, this is a *non sequitur.* Intention to do a certain thing necessarily implies at least presumptive knowledge of the thing intended to be done. We know that even this court does not take judicial cognizance of the statute law of another state until pleaded. How, then, can we consistently charge a citizen of Indiana with actual or presumptive knowledge which this

court itself disclaims? And, if appellants are not presumed to know that all promissory notes are negotiable under the statute of Illinois, how can we say that appellants intended to make their note negotiable, from the isolated fact that it was made payable at a bank in Illinois?

In *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 74 N. E. 523, 69 L. R. A. 870, 108 Am. St. 324, it was held that a contract must be construed under the laws of the state where executed, unless it can be fairly said that the parties at the time of its execution clearly manifested an intention that it should be governed by the laws of another state. In the same case, the court, on page 682, said: "The substantial essence of a contract, evidenced by a promissory note, is the undertaking by the makers to pay the principal sum of money named. The place of payment is an incidental matter. The makers are not discharged from their principal obligation by an unaccepted tender of the amount owing, at the time and place designated for payment, but by such tender are released only from liability for damages which would otherwise accrue from nonpayment. Makers of promissory notes cannot insist that they will pay at the place designated or not at all, but may be sued on their obligation, and payment of the principal amount enforced at any place where jurisdiction over their persons or property may be acquired."

The legal effect of the majority opinion is to bind the maker of a promissory note, not negotiable under the law of the place of execution, by a statute of a foreign state, of which the maker has neither actual nor presumptive knowledge. Such a rule, I believe, would open the door to deception and fraud, and would be taken as an invitation to cut off legitimate defenses, by inserting, as the place of payment, the name of a bank in another state, where all promissory notes are negotiable. I think the majority opinion is in clear antagonism to the principle announced

in the cases herein cited, and that the judgment should be reversed.

## On Petition for Rehearing.

LAIRY, C. J.—Appellants in their reply brief, strongly insist that the verified second and fifth paragraphs of answer are sufficient as answers of *non est factum*.

6.  Counsel direct the attention of the court to certain averments in each of these paragraphs which, if considered apart from the other averments of the pleading, would be a sufficient statement of the fact that the execution of the note was never completed by delivery.

The averments denying the delivery of the note in general terms are to be considered and construed in connection with the other averments of the pleading in which they occur. When the other averments are considered, it becomes apparent that the appellants did not intend to deny under oath that the note was placed in the hands of the payee by the makers after it was signed, or at least that they did not intend to deny that the makers without objection suffered it to be in the possession of the payees. The averments of the answers show that the note in suit was given to McCabe and Lindsey as payees for the purchase price of a stallion and that by agreement with the payees the purchase price was to be divided into ten shares of $200 each; that John Bombolaski was to take two shares and that each of the other defendants was to take one, and that each should be liable on the note signed for the amount represented by the shares which he had agreed to take and for no greater amount. It is further averred that it was expressly agreed by and between the payees of said note and these appellants, that the note was not to be delivered or made effective as a note until the same was signed by all of the persons who had agreed to take the remainder of the shares in such stallion; and that, in pursuance of this agreement, the

appellants named signed the note, but others who had agreed to take shares in the stallion did not sign it or pay their share in cash; and that the appellants demanded a return of said note as soon as they discovered that the payees had carried it away and had it in their possession. The averments on the subject of nondelivery as found in the fifth paragraph are as follows: "They say said note was never delivered by them to the said McCabe and Lindsey, or any other person; that the said note was never delivered by the agent of these defendants to the said McCabe and Lindsey, or their agent, or any other person authorized to receive the same. * * * and said defendants further say that they specifically deny the delivery of the note sued on in plaintiff's complaint."

When the latter averments which we have quoted are considered in connection with the other averments of the answer, we think that it is manifest that the pleading proceeds upon the theory that the possession of the note by the payees was not the result of a valid and effective delivery for the reason that they betrayed the confidence which had been reposed in them by the appellants and carried the note away before it had been signed by all who had agreed to sign it. If such facts were pleaded as a defense in an action by the payees of the note, a different question would be presented, but such facts do not constitute a defense as against an innocent holder. The answers disclose that the note was in the possession of the payees after it had been signed by the appellants, and such possession is not accounted for or explained. It is not averred that McCabe and Lindsey obtained its possession without the consent of appellants, by stealth, or by any fraud, trick, or artifice. If it had been the intention of the appellants to deny that the execution of the note had ever been completed by delivery, they could have done so in plain and unequivocal language. The Supreme Court has held that an answer in *non est factum* is insufficient unless

the execution of the instrument is denied under oath in terms so certain and specific as to warrant a conviction of perjury upon proof of the execution of the instrument. *Woollen* v. *Whitacre* (1880), 73 Ind. 198.

As a general rule the delivery of a written instrument involves not only a change of possession but also an intent on the part of the one making the delivery that the instrument shall by that act become effective. This is the rule as affecting negotiable instruments where the question arises between the original parties, but there is a well recognized exception to the general rule where the rights of a *bona fide* holder are involved. If the maker of a negotiable note, by negligence or through misplaced confidence permits the note to be in possession of the payee under such circumstances as enable him to place it in circulation, he will not be permitted to say that he did not intend that the note should become effective at the time he parted with its possession. Such a case calls for an application of the principle, that when one of two innocent parties must suffer because of the wrongful act of a third, the loss must be borne by that one whose fault, negligence, or credulity enabled the third party to do the wrong. *Judy* v. *Warne* (1913), 54 Ind. App. 82, 102 N. E. 386, and cases there cited.

It is evident that the paragraphs of answer under consideration proceed upon the theory that the payees were permitted to have the note in their possession but that by reason of the agreement set out in these answers, such possession did not constitute a legal delivery. The answers are insufficient on this theory and we are content to adhere to our former ruling as expressed in the original opinion.

Petition overruled.

NOTE.—Reported in 101 N. E. 837; 103 N. E. 422. As to who is *bona fide* holder of negotiable instrument, see 9 Am. Dec. 272; 44 Am. Dec. 698. As to fraud in inception or delivery of note as affecting *bona fide* holder, see 11 Am. St. 309; 37 Am. St. 458. As to the liability to *bona fide* purchaser of a note getting into circulation

without maker's consent, see 3 L. R. A. (N. S.) 212. As to agreement for other signatures before delivery of note, see 45 L. R. A. 321. As to the conflict of laws as to negotiable paper, see 61 L. R. A. 193; 19 L. R. A. (N. S.) 665. See, also, under (1) 7 Cyc. 636; (2) 7 Cyc. 635, 641; (3) 7 Cyc. 641; (4) 7 Cyc. 635, 638; (5, 8) 8 Cyc. 55; (6) 8 Cyc. 154; (7) 31 Cyc. 189, 529.