## AMERICAN TYPE FOUNDERS, Inc., v. LANSTON MONOTYPE MACHINE CO.

### No. 1563.

District Court, E. D. Pennsylvania.

June 23, 1942.

Martin M. Reed, of Warriner & Reed and Duane, Morris & Heckscher, all of Philadelphia, Pa., for plaintiff.

Larkin, Rathbone & Perry, Charles B. McGroddy, Jr., and Hancock Griffin, Jr., all of New York City, and Donahue, Irwin, Merritt & Gest and Crawford A. Battle, all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This action arises upon petition for declaratory judgment and incidental relief in accordance with the Federal Declaratory Judgment Act.[1] The prayer of the petition is that the court declare terminated a contract entered into between the parties on December 1, 1925, and grant incidental relief in the form of damages. From the evidence I make the following special

[1] Act of Mar. 3, 1911, c. 231, § 274d, as added June 14, 1934, c. 512, 48 Stat. 955, and amended Aug. 30, 1935, c. 829, § 405, 49 Stat. 1027, 28 U.S.C.A. § 400.

### Findings of Fact.

1. Plaintiff is a New Jersey corporation with its principal place of business in Elizabeth, New Jersey, and it is engaged in the business of designing and manufacturing type.

2. Respondent is a Virginia corporation with its principal place of business in Philadelphia, Pennsylvania, and it is engaged in the business of manufacturing and selling monotype machines and matrices for use with such machines.

3. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

4. An actual controversy exists between the plaintiff and defendant involving their respective rights and liabilities under a type reproduction agreement entered into between them on December 1, 1925.

5. By the agreement entered into by plaintiff under its former name of American Type Founders Company defendant agreed to pay to plaintiff seven cents for each matrix it sold which was designed to reproduce type faces manufactured by the plaintiff, with the exception of those type faces which defendant had been reproducing prior to the execution of the said agreement and as to which no charge for reproduction was to be made.

6. No provision was made in the agreement concerning the duration or termination thereof.

7. From December 1, 1925 until December 29, 1938, defendant paid to plaintiff in excess of $100,000 in royalties for its sale of matrices of plaintiff's type.

8. Defendant maintains a normal inventory of matrices of plaintiff's type of approximate value of $800,000.

9. Defendant as of October 10, 1941, had invested the sum of $139,806.65 in tools, dies and equipment designed specifically for the manufacture of matrices of plaintiff's type reproduced by defendant subsequent to December 1, 1925.

10. On and after January, 1935, none of the type faces manufactured by plaintiff was covered by outstanding design patents.

11. On December 28, 1938, plaintiff notified defendant that the agreement of December 1, 1925, had been cancelled and terminated.

12. Despite such notification defendant continued, after December 28, 1938, to reproduce plaintiff's type faces and to remit to plaintiff monthly checks at the rate of seven cents per matrix for each matrix sold to reproduce a type face which defendant had not reproduced prior to December 1, 1925.

13. On August 15, 1938, plaintiff notified defendant that it would accept payment of royalties which had been tendered by defendant and would extend until December 31, 1939, defendant's right to dispose of matrices in stock upon payment of royalties as stipulated in the agreement of December 1, 1925.

14. Up until and including December 31, 1939, plaintiff received and cashed the monthly checks remitted by defendant for matrices sold by it for which royalties were required by the agreement.

15. Since January 1, 1940, defendant has continued to send, and plaintiff has continued to receive and retain, monthly checks representing payments of seven cents per matrix reproduced from plaintiff's designs as provided in the agreement.

16. Such checks were in the total amount of $8,323.07 for the period between January 1, 1940, and the date of trial and were not presented for payment by the plaintiff but were, and still are, retained by it in its possession.

17. It was the intention of the parties that the agreement of December 1, 1925, was not to be terminated except upon mutual consent.

### Discussion.

■ This case presents the unusual situation of a plaintiff complaining not that the defendant has failed to comply with the contract between them but that defendant insists upon complying with it after notification by the plaintiff that the contract has been terminated. The basic question is whether the plaintiff had the right to declare the contract terminated. This question is to be determined under the Pennsylvania law since this court is sitting in the Eastern District of Pennsylvania, and no evidence has been produced as to the place where the contract was executed. The allegation of the petition that the contract was executed in New Jersey was denied in the answer. No proof on this subject was offered. Under these circumstances, it will be presumed that the contract was executed in this state, and the law of the forum will be applied in determining the construction of the contract. Bombolaski v. First National Bank, 55 Ind.App. 172, 101 N.E. 837, 103 N.E. 422.

The contract in question was entered into between the parties on December 1, 1925. It recites that the plaintiff is a designer of type faces and that the defendant is desirous of manufacturing and selling matrices of these faces for certain purposes and under certain conditions and restrictions. It then provides that the plaintiff grants to the defendant the exclusive right to manufacture matrices of all sizes of all its faces and to sell them for use only on typesetting and typecasting machines manufactured by the defendant, namely, Lanston Monotype machines. Defendant agreed to pay a royalty of seven cents for each matrix containing a face designed by the plaintiff and to make payments therefor monthly. A further provision, however, recites that no royalty need be paid by defendant upon the sale of any matrix reproducing any of plaintiff's type faces which defendant had reproduced prior to the execution of the agreement. The agreement contained no provision with respect to its duration or termination.

In the absence of a provision as to the termination of a contract there arises the difficult question of whether the legal effect of this omission is that the term of the contract is perpetual or whether the contract is terminable at the will of either party. On the general question thus presented there have been a number of decisions announcing principles of interpretation and construction which are apparently inconsistent and contradictory.

The truly determinative factor is the intention of the contracting parties, but since the parties have failed to make any affirmative statement of their intention as to termination, the courts are called upon to decide whether the parties intended that the contract should be terminable except by mutual consent, and are obliged to attempt to ascertain such intention from the nature and subject matter of the contract and the circumstances under which it was executed. See 1 Williston on Contracts (Revised Edition) § 38.

In order to obtain a proper understanding of the nature and subject matter of the contract in the present case it is necessary to examine into the businesses conducted by the parties at the time of the execution of the contract. Plaintiff was and is a "type founder", and its business consists in the designing and manufacturing of various type "faces" or styles of letters and other characters used in printing. The defendant is engaged in the manufacture and sale of Lanston "monotype" machines and matrices for use thereon. A "monotype" machine is an intricate device which casts and assembles type for use by printers. A matrix is a metal mold containing a negative of a character into which molten type is forced by the monotype machine to create a single piece of type. The process by which a particular style of type is embedded in a matrix consists of a number of somewhat complex operations but ultimately it involves the manufacture of a "punch" for each character of that style which is driven under terrific pressure into a piece of metal to form the matrix. Defendant supplies these matrices to persons to whom it has sold its monotype machines and keeps a large inventory available to replace matrices lost or damaged by its customers. It likewise keeps matrices of various sizes in each style in order to supply the needs of such customers.

The rights granted to the defendant under its contract with plaintiff, therefore, were to copy, in the manufacture of matrices for use only on Lanston monotype machines, the various "faces" or styles of type designed by plaintiff. The charge to the defendant was seven cents for each matrix so sold, except for matrices which would reproduce such of plaintiff's type faces as defendant had been reproducing prior to the execution of the agreement. As to these latter matrices, defendant was given the right to continue to sell them without charge.

In view of this somewhat meager background and of the failure of the parties to make provision as to the termination of their contract, what intention with respect thereto can be ascertained? It appears clear that as to the right granted to defendant to continue to copy without charge those faces which it was copying at the time of the execution of the contract, it was not the intention of the parties that the contract be terminable by the plaintiff. Certainly the fact that defendant obtained this right as part of the consideration for its obligations under the contract negatives any implication that plaintiff could at its pleasure withdraw that right.

With respect to the right of the defendant to copy, upon payment of the stipulated royalty, faces which it was not making at the time of the execution of the contract, if plaintiff sought to terminate that right, the intention is not quite so clear. On the

whole, however, the court is convinced that it was not intended by the parties that plaintiff should have the right to cancel the contract at its pleasure. From the subject matter of the contract and the nature of the business operations of the parties it must have been contemplated that defendant would be required to make substantial investments in the tools and equipment, such as punches, required to manufacture the matrices it sold, and that the defendant would be obliged to maintain an inventory of matrices for the prompt supplying of replacements for the needs of its customers.

■ In an effort to avoid the obviously harsh results which would obtain if it insisted that the contract were to be construed as cancellable at a moment's notice, plaintiff suggests that the contract be construed cancellable by it only upon reasonable notice. Such reasonable notice, it contends, was afforded when it notified defendant in August of 1939 that defendant could continue operations looking toward the disposal of its stock of royalty matrices up until December 31, 1939. Plaintiff has, however, failed to meet the burden of proof upon it to establish that it was the intention of the parties that the contract be cancellable by either party upon reasonable notice. If such had been the case, it could readily have been expressed in the agreement. As was said in Rossmassler v. Spielberger, 270 Pa. 30, at page 41, 112 A. 876, at page 880: "Apart from contracts which, from their inherent nature, imply a power of revocation, it would seem that the intention of the parties to an agreement, that it should be perpetual and without limit as to duration could not be more properly expressed than by silence as to any time limit or power of revocation. Although there appears to be some authority to the contrary, the rule seems to be that, where no limitation is expressed in the agreement, neither party can terminate it without the consent of the other, unless the making of the contract itself indicates with sufficient clearness that the parties must have intended some other determination."

The absence of a provision as to termination cannot be said to indicate that either plaintiff or defendant intended the contract to be terminable at will, in view of the possible advantages to each of them in having it continue for an indefinite period. As respects the plaintiff, it was to be compensated thereunder for the defendant's use of type faces as to which plaintiff's design

patents were of questionable validity (see Goudy v. Hansen, 1 Cir., 247 F. 782, certiorari denied 246 U.S. 667, 38 S.Ct. 336, 62 L.Ed. 930; American Type Founders' Co. v. Damon & Peets, C.C., 120 F. 715), and, even assuming their validity, for an indefinite period after their expiration. As respects the defendant, it was obliged to pay royalties only if it sold matrices designed and manufactured by the plaintiff, and accordingly the extent of its obligation was subject to its own control. The absence of a provision as to termination of the contract can, therefore, hardly be said to be indicative that it was the defendant's intention that the contract could be cancelled at will by either party.

As has been indicated, the authorities are of limited help in deciding cases of this type because the intention of the parties can be derived only from a consideration of the nature and subject matter of each particular contract and the circumstances existing at the time of its execution. Some support, however, for the conclusions arrived at herein may be found in cases holding that where the enjoyment of a license must necessarily be and is preceded by the expenditure of money, it is not revocable at the pleasure of the licensor. See Harris v. Brown, 202 Pa. 16, 51 A. 586, 90 Am.St.Rep. 610, and cases cited therein.

■ In its petition plaintiff has further prayed for incidental relief in the form of entry of a judgment in its favor for the amount of royalties due it since it has attempted termination of the contract. Since these royalties have been duly tendered by the defendant in accordance with the terms of the contract and since defendant has never challenged plaintiff's right to them thereunder, plaintiff is obviously not entitled to such relief.

■ Defendant has challenged the jurisdiction of this court on the ground that although there is diversity of citizenship of the parties, there is no showing that the amount in controversy is in excess of $3,000. This challenge is predicated principally on the argument that, it being admitted that the list of plaintiff's patents for faces designed by it and currently used by defendant having expired in 1935, plaintiff has failed to show that property rights of any value whatsoever are involved in this controversy. In view of the fact that sums of money far in excess of $3,000 have accrued and are accruing under the contract the continued existence of the operation of

which is the subject of the controversy in this proceeding, the requisite jurisdictional amount is present and it is unnecessary to consider the extent of plaintiff's property rights apart from the contract.

I make the following

Conclusions of Law.

1. This court has jurisdiction over this case.

2. Where a contract is silent as to termination, the intention of the parties as derived from the nature and subject matter of the contract and the circumstances existing at the time of its execution determines whether it is cancellable at the instance of either party.

3. The contract between plaintiff and defendant dated December 1, 1925, is not cancellable at the will of either party, and plaintiff's attempt to declare it terminated is ineffective.

4. The contract between plaintiff and defendant dated December 1, 1925, is still in full force and effect.

Judgment is hereby entered for the defendant; costs to be paid by the plaintiff.